

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00213-CR

Justin Wade **SMITH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 10-2531-CR
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  February 27, 2013

AFFIRMED

Justin Wade Smith, appellant, was convicted by a jury of continuous sexual abuse of a child, R.W., and sentenced to forty years' confinement.  He appeals and argues: (1) the evidence proving the second incident of abuse against R.W. occurred thirty days or more after the first incident was insufficient, (2) the evidence proving R.W. was younger than fourteen years of age on the date of the second incident was insufficient, (3) the jury charge erroneously failed to instruct the jury they must agree unanimously that appellant, during a period that is thirty days or more in duration, committed two or more acts of sexual abuse, and (4) the jury charge denied

appellant his right to a unanimous verdict because it did not instruct the jury they must agree unanimously that appellant, during a period that is thirty days or more in duration, committed two or more acts of sexual abuse. We affirm.

## SUFFICIENCY OF THE EVIDENCE

A person commits the offense of continuous sexual abuse of a young child if, during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse and, at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age. TEX PENAL CODE ANN. § 21.02 (West 2010).

In reviewing for sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We give deference to the jury's credibility and weight determinations, and to their duty to resolve conflicts in the testimony. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 8–9 (Tex. Crim. App. 2000) (en banc), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893, 912–13 (Tex. Crim. App. 2010).

Appellant was the live-in boyfriend of Susan.[1] The victim, R.W., is Susan's niece. R.W. was born on September 16, 1995. R.W. lives with her grandparents, but testified she would visit

---

[1] For the protection of the identity of the minor child, all adults will be referred to as either appellant(s) or by their first name only.

her Aunt Susan every other weekend and would stay with Susan and appellant. R.W. testified about two acts of sexual abuse by appellant that occurred when she was thirteen years old.

R.W. testified the first act occurred on New Year's Eve of 2008. According to R.W., she was at Susan and appellant's house for a New Year's Eve party. After the party ended, everyone left, Susan went to bed, and R.W. and appellant stayed up and watched television in the living room. R.W. testified that she was lying down on the couch, falling asleep, when she awoke to find appellant touching her inappropriately. R.W. stated: "I felt something like in my pants, and he was putting his finger in my vagina hole." R.W. yelled "stop" at appellant loud enough to wake Susan, who was sleeping in the bedroom. Susan testified she came out of the bedroom to find R.W. sitting on the couch with her knees up on the couch facing appellant, and that appellant "had his hand between her legs" above the knees. Susan asked if R.W. was okay, to which R.W. replied she was fine. Susan testified she went back to bed "thinking everything was okay." R.W. stayed at the house until morning when her grandmother came to pick her up. She did not tell anyone about the incident.

R.W. testified the second incident happened about four months later in April of 2009. According to R.W.'s testimony, she went inside appellant's truck to get some DVD's. Appellant was a truck-driver and drove a semi-truck that had a small cabin inside. R.W. testified: "When I went to the cab, [appellant] was in there, and like he pushed me on the bed, and he pulled down my pants, and he stuck his penis in my hole, and I pushed him because it hurt." R.W. testified that her "hole" meant her vagina. R.W. could not remember how long this incident lasted. She stated after she pushed him off she ran inside, but did not tell anyone what had occurred.

In May of 2010, when she was fourteen years old, R.W. told a teacher about the abuse that had occurred. R.W. testified she finally told because she was having "really bad flashbacks" about the incidents. R.W.'s teacher, Barbara, testified R.W. came to her and told her how she

was concerned about a "friend" because she felt like her "friend" was in a dangerous situation. R.W. asked Barbara about the process she would need to go through to help her "friend." After Barbara explained the process of reporting abuse, R.W. asked if reporting the abuse would "save" the "friend." Barbara told R.W. she "may very well be saving her," and R.W. then burst into tears and told Barbara, "I wish someone could save me." Barbara took R.W. to the school counselor and they reported the sexual abuse.

In his first and second issues on appeal, appellant contends the evidence presented at trial (1) was insufficient to prove the second incident of abuse against R.W. occurred thirty days or more after the first incident and (2) was insufficient to prove R.W. was under fourteen years of age at the time of the second incident of abuse.

Appellant argues the State failed to provide sufficient evidence to prove a date or even a time period when the second incident occurred. Appellant contends R.W. testified to two different time periods as the date the second incident occurred—April 2009 and April 2010. He argues this demonstrated R.W. was not able to remember a date or time period and, therefore, the State failed to provide sufficient evidence of when the second incident occurred. Appellant also contends that because R.W. testified that she was either thirteen or fourteen at the time the second incident occurred, and because R.W. turned fourteen eight months before her outcry, the State failed to prove she was under the age of fourteen at the time of the second incident. On direct, the State questioned R.W. as follows:

Q:    Now, I want to take you back to April 15th or thereabouts of 2009, okay?
A:    Okay.
Q:    About four months later.[2]
A:    Yes.

---

[2] Referring to four months after the first incident of abuse on New Year's Eve 2008.

Later, on cross-examination, appellant's trial counsel questioned R.W. about the timing of the second incident:

> Q:    Okay, I want to talk about the — the second incident for a moment.  Now, the Prosecutor asked about a date, April 15th of 2009.  Do you know when the second incident took place?
> A:    I don't remember.
> Q:    Okay, so when you agreed with him April 15th, 2009, is that just because he suggested it to you?
> A:    Yes.

On re-direct examination, the State asked R.W. to clarify the dates:

> Q:    Okay, [R.W.], I just have a couple of questions for you.  I — I think when [defense counsel] had you on cross-examination, he asked you if you had talked to your teacher and counselor in May of 2010, and you agreed —
> A:    Yes.
> Q:    — do you remember?  So that was actually only one month after the sexual assault by the Defendant, right?
> A:    Yes.
> Q:    So you basically told within a month —
> A:    Yes.
> Q:    — of the sexual assault.
> A:    Yes.
> Q:    Now, [R.W.], you had had some trouble remembering, you know, sequences of events and details, facts, dates, what had happened.
> A:    Yes.
> Q:    Can you tell the jury why that is?
> A:    Because it was a long time ago.[3]

Appellant's counsel then questioned R.W. again:

> Q:    Are you saying now that the sexual assault, the second one, now took place some time in 2010, or was it in 2009?
> A:    I don't remember.
> Q:    How old were you when the second incident took place.
> A:    I think I was 14.
> Q:    You were 14?
> A:    Yes.
> Q:    Okay.  Now, you said the first incident happened December 31st of 2008, correct?
> A:    Yes.
> Q:    Okay, what grade were you in?

---

[3] The trial took place in January of 2012, approximately three years from the date of the first incident of sexual abuse.

- 5 -

A:      What grade?

Q:      What grade in school were you in?

A:      7th.

Q:      7th. When the second incident took place, you were in 7th grade as well, correct?

A:      Yes.

Q:      Okay, and the allegation that you made to a teacher, that took place in May of 2010, correct?

A:      Yes.

R.W. was thirteen years old and in seventh grade during the 2008/2009 school year. Although R.W. stated she believed she was fourteen when the second incident occurred, R.W. also testified that both incidents took place while she was in seventh grade, putting the time period of the second incident of abuse before May of 2009—the end of her seventh grade school year. R.W. did not turn fourteen until September of 2009. The State further questioned R.W.:

Q:      So it was May of 2010 when you reported it to the teacher and counselor—

A:      Yes.

Q:      — so it was a year?

A:      Yes.

Q:      Okay, so that — that means that the rig incident, the truck incident would've been April of 2009, like you testified previously.

A:      Yes.

Q:      And then you waited a year to report it.

A:      Yes.

Q:      Okay, can you tell us why?

A:      Because I was scared to tell anybody.

Appellant is correct that the record shows there was some confusion as to the date of the second incident of abuse. R.W. indicated she had some trouble recalling events and her testimony suggests two different time periods. However, we must defer to the jury to resolve conflicts in the testimony. *Hooper*, 214 S.W.3d at 13.

Additional evidence presented at trial supported the second incident of abuse occurring in April of 2009. Craig Jones, the investigating officer assigned to R.W.'s case, testified he chose not to subject R.W. to a medical examination during his investigation. Jones stated his reasons

for this were as follows: "We're talking a yearish had gone by since she alleged anything had happened. . . . So in this, I made the decision, and I'll stand by that decision to this day because we had had a year gone by, I didn't think that it was proper to have her participate in a SANE . . . . Since [sic] year had gone, I just didn't think it was appropriate for this young lady." Jones's testimony indicated a year had passed between the last incident of sexual abuse and her outcry. It is not disputed R.W. made her outcry in May of 2010. This would place the time of the second incident of abuse around April/May of 2009, at which time R.W. was thirteen years old.

Based on the foregoing, we conclude the evidence presented at trial, in the light most favorable to the verdict, was sufficient to establish the second incident of sexual abuse occurred on or around April 15, 2009—a date more than thirty days from the first incident that occurred on New Year's Eve of 2008 and at which time R.W. was thirteen years of age.

## JURY CHARGE

In his third and fourth issues on appeal, appellant challenges the jury charge. First, appellant contends the jury charge erroneously failed to instruct the jury in accordance with Penal Code section 21.02 that they must agree unanimously that appellant, during a period that is thirty days or more in duration, committed two or more acts of sexual abuse. Second, appellant contends because the court failed to include this instruction, he was denied the right to a unanimous verdict in violation of his due process and constitutional right to a unanimous jury verdict.

In analyzing a jury-charge issue, we must first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If there was error, we must next analyze that error for harm. *Id*. The degree of harm necessary for reversal depends on whether the defendant preserved the error by objecting to the charge at trial. *Id*. If the defendant objected, we will reverse if we find "some harm." *Id*. (citing *Almanza v. State*, 686 S.W.2d 157,

171 (Tex. Crim. App. 1984)). When the defendant failed to object, we will not reverse for error in the jury charge unless the record demonstrates "egregious harm" to the defendant. *Id*. at 743–44.

The continuous sexual abuse statute, Penal Code section 21.02, provides: "If a jury is a trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 days or more in duration, committed two or more acts of sexual abuse." TEX. PENAL CODE. ANN. § 21.02(d). On appeal, appellant asserts this language should have been included in the jury charge and the failure to include it was in violation of Texas Code of Criminal Procedure article 36.14 and, thus, was error. We agree. Article 36.14 requires that a jury charge must be delivered "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Because the unanimity requirements set forth in section 21.02(d) were not included in appellant's case, we conclude the charge was erroneous because the law applicable to the case was not distinctly set forth in the jury charge as required by the Texas Code of Criminal Procedure.

Having concluded the charge was erroneous, we must now determine whether appellant was harmed by the failure to include the unanimity instructions found in section 21.02. Appellant did not object at trial to the charge, therefore we review the record for whether there was "egregious harm" to the appellant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc). Egregious harm affects "the very basis of the case," deprives the defendant of a "valuable right," or "vitally affects a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (en banc) (citing *Almanza*, 686 S.W.2d at 172). Reversal is not required unless the error is so egregious that the defendant was denied a fair and impartial trial. *Almanza*,

686 S.W.2d at 171. We assess to determine whether the defendant suffered actual, not just theoretical harm. *Smith v. State*, 340 S.W.3d 41, 51 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Id.* Any harm that is inflicted by an erroneous charge must be assessed in light of (1) the entire jury charge, (2) the state of the evidence, (3) the argument of counsel, and (4) any other relevant information in the record. *Id.*

## 1. The Entire Jury Charge

The application paragraph of the jury charge was as follows:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 31st day of December, 2008, through the 15th day of April, 2009, in Guadalupe County, Texas, the defendant Justin Smith, did then and there commit two or more acts of sexual abuse against [R.W.], a child younger than fourteen (14) years of age, more than thirty (30) days apart, namely:

That the defendant, Justin Smith, did then and there, with the intent to arose or gratify the sexual desire of Justin Smith, intentionally or knowingly engage in sexual contact with [R.W.] by touching the genitals of [R.W.], a child younger than fourteen (14) years of age with the defendant's hand and or fingers, or

That the defendant, Justin Smith, did then and there intentionally or knowingly cause the penetration of the sexual organ of [R.W.], by the defendant's finger, and

That the defendant the defendant [sic], Justin Smith, did then and there intentionally or knowingly cause the penetration of the sexual organ of [R.W.], a child under fourteen (14) years of age, with the defendant's sexual organ (penis) then you will find the defendant guilty of Continuous Sexual Abuse.

While the instructions preceding this paragraph did not include the unanimity instructions from section 21.02, the application paragraph made it clear that the jury must find appellant committed two or more acts of sexual abuse, more than thirty days apart, against R.W. while she was younger than fourteen years of age in order to find him guilty of continuous sexual abuse. The charge, with the use of the words "or" and "and" separating the paragraphs also made clear that

the jury had to find appellant committed the act referenced in either the first paragraph "or" the second paragraph, "and" they must find appellant committed the act referenced in the third paragraph to find him guilty of continuous sexual abuse.[4]

## 2. The State of the Evidence

In this section of the egregious harm analysis, appellant points to the state of the evidence relating to the thirty or more days issue and directs us to the sufficiency of the evidence argument in his first two issues. Appellant argues the failure to "include the jury instruction on the very issue that the State offered so little evidence caused egregious harm to [a]ppellant." We have already concluded the evidence presented at trial was sufficient to establish the date of the second incident was in April 2009—more than thirty days after the New Year's Eve incident. Therefore, we determine appellant's argument regarding the state of the evidence as it relates to the thirty or more days issue does not support his contention that there was egregious harm.

Appellant also contends the testimony of the State's witness, Miranda, confused the jury in regards to the thirty day requirement. Miranda testified at trial that she witnessed R.W. appearing very uncomfortable around appellant on one occasion when she was visiting R.W. at R.W.'s aunt's house in April of 2009. Miranda testified she saw appellant put a blanket over himself and R.W. and that R.W. appeared to be very shaky and scared of appellant. There was no additional testimony regarding this incident and the State did not allege it as a third incident of sexual abuse. Appellant's argument is that this testimony of alleged inappropriate behavior presented to the jury "additional evidence to consider in relation to the thirty or more days requirement," thereby further confusing the jury. We conclude appellant's argument that Miranda's testimony confused the jury and "led the jury to believe that they could consider the incident described by Miranda . . . as one of the acts of abuse that the State needed to prove

---

[4] The charge also contained a general instruction that any verdict from the jury must be unanimous.

against [a]ppellant" is without merit as there was nothing included in the charge for the jury to consider what Miranda witnessed as an act of sexual abuse for purposes of finding him guilty of continuous sexual abuse.

### 3. Arguments of Counsel

During closing argument, the State argued as follows:

I want to go through a couple of things in your charge. I want to go — have you go to Section 6. It's the top of the third page. Section 6 tells you what the State has to prove. Do you remember how this charge was explained to you as a continuous sexual abuse case? Two or more acts of sexual abuse more than 30 days apart. That's explained to you in that first paragraph. If you'll notice right after that, there are three paragraphs with Justin Smith's name in bold, the next three paragraphs. Those are the three separate acts that [R.W.] says the Defendant did to her.

Now, the — that second paragraph in Number 6, which is the first paragraph that starts, "the Defendant, Justin Smith, intentionally or knowingly engaged in sexual contact with [R.W.] by touching her genitals." If you'll go down to the very end of the paragraph, there's an "or," then there's the next paragraph. That's the allegation that the Defendant penetrated her sexual organ with his finger. You can — the reason there's an "or" there is because those happened on the same date. Those are the New Year's Eve allegations.

You can choose one of those. You don't have to be unanimous in which one of those you choose. Juror number five could say, I think he did the first one. Juror number six can say, he did the second one. But you all have to agree one of those occurred. You don't have to agree which one; just that one of those occurred. You have to be unanimous on.

At the end of that short second paragraph of allegations is an "and." I underlined that "and" on my page. That's the one that happened on in [sic] April of 2009 in the semi truck where [R.W.] told you that he raped her. You have to be unanimous on that one.

So to be clear, because this is the confusing part of the Charge, it's the — everything else is pretty self-explanatory. The first two are either/or those things that happened on December 31st, that New Year's Eve night. You have to be unanimous on the last one, the one that happened in April in the semi truck.

Because there were only two incidents of sexual abuse, the State's closing arguments made clear the jury had to be unanimous that the incident in the semi-truck occurred *and* they

also had to be unanimous that on New Year's Eve appellant either engaged in sexual contact with R.W. *or* penetrated her with his finger in order to convict him of the offense of continuous sexual abuse. This was an accurate recitation of the law because "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant." TEX. PENAL CODE ANN. § 21.02(d). Therefore, in regards to the New Year's Eve allegations, the State correctly argued in closing that the jury did not have to unanimously agree on which specific act the appellant committed, so long as they unanimously agreed an act of sexual abuse occurred on New Year's Eve.

In *Ngo*, in addition to an erroneous jury charge, the State and the trial judge both incorrectly told the jury they need not return a unanimous verdict during arguments. *Ngo*, 175 S.W.3d at 751 ("[B]oth the trial judge and the prosecution misstated the law at the very beginning of the case and at the very end."). Here, the State correctly informed the jury of the correct legal principles regarding unanimity during arguments. *See id.* (indicating reasonable jurors may infer the word "unanimously" from "the context of the entire charge or from the comments of the advocates emphasizing the correct legal principles."). We also note appellant's trial counsel made no closing arguments regarding unanimity as to the elements of the offense (i.e. the dates of the offense, the age of the victim). Instead, closing argument was directed at R.W.'s credibility.

## 4. Conclusion

This was not a case in which the jury charge error was "compounded by the one misleading statement concerning unanimity that was set out in the jury charge, as well as by the affirmative statements of both the trial judge and prosecutor that the jury could indeed return a non-unanimous verdict" as in *Ngo*. *Ngo*, 175 S.W.3d at 752. Nor was this a case in which the jury was instructed on the opposite of the correct law. *See Hutch*, 992 S.W.2d at 173 (finding

egregious harm when the erroneous charge instructed the jury of the complete opposite of the correct law on legality of stops and admissibility of evidence when that law was the "crux" of appellant's defense). Instead, an instruction on unanimity in continuous sexual abuse cases was erroneously excluded in the charge, but the jury was correctly instructed in the application portion of the charge which clearly set out the elements of the offense the jury was required to find beyond a reasonable doubt to convict appellant of continuous sexual abuse of a child. Based on our review of the entire record, we conclude appellant was not denied a fair and impartial trial and, therefore, was not egregiously harmed.[5]

## CONCLUSION

Based on the foregoing, we conclude the evidence was sufficient to find appellant guilty of continuous sexual abuse of a R.W., a child. We also conclude the jury charge was erroneous; however, appellant was not egregiously harmed by the error and he was not denied a unanimous verdict. We affirm.

Sandee Bryan Marion, Justice

PUBLISH

---

[5] Because we conclude appellant was not egregiously harmed by the failure to include an instruction on unanimity, we also conclude appellant was not denied the right to a unanimous verdict and, therefore, we overrule appellant's fourth issue on appeal.