ACCEPTED
04-14-00618-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/16/2015 8:01:35 PM
KEITH HOTTLE
CLERK

# No. 04-14-00618-CR

IN THE FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
2/17/2015 8:19:00 AM
KEITH E. HOTTLE
Clerk

THOMAS LITTLE

Appellant

vs.

THE STATE OF TEXAS

Appellee

On Appeal from the 25th District Court
of Guadalupe County, Texas
Hon. William D. Old, III Presiding
Trial Court Cause No. 14-0698-CR-C

## APPELLANT'S BRIEF

Gregory Sherwood
Attorney at Law
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on Appeal
for Appellant Thomas Little

**Identity of Parties and Counsel**

No. 04-14-00618-CR; *Thomas Little v. The State of Texas*

Thomas Little (Appellant):

Thomas Little
TDCJ # 1965377
Garza West Unit
4250 Highway 202
Beeville, Texas 78102

Trial Counsel:                                          Appellate Counsel:

Scott Simpson (retained 2014 trial & pretrials)    Gregory Sherwood
1901 Buena Vista                                      (appointed)
San Antonio, Texas 78207                            P.O. Box 200613
                                                     Austin, Texas 78720-0613

Brock Huffman (retained 2014 trial)
110 W. Nueva
San Antonio, Texas 78204

Edward Schroeder (2012 & 2013 pretrials)
439 E. Olmos Drive
San Antonio, Texas 78212

The State of Texas (Appellee):

Jessie Allen (2012 & 2013 pretrials)
Heather Hines (Feb. 2014 pretrial)
William Squires (Apr. 2014 mtn. for continuance)
Steven Delemos (July 2014 pretrial & Aug. 2014 trial)
Keith Henneke (Aug. 2014 trial)
Assistant District Attorneys
25th Judicial District Attorney's Office
211 W. Court Street, Suite 260
Seguin, Texas 78155

i

## Table of Contents

Identity of Parties and Counsel ........................................................... i

Table of Contents ............................................................................ ii

Index of Authorities ........................................................................ iv

Statement of the Case ...................................................................... vi

Statement Regarding Oral Argument ............................................... vii

Issues Presented ............................................................................. vii

    Issue 1: The trial court erred in refusing appellant's request
    for a general article 38.22, § 6 voluntariness instruction .................. vii

    Issue 2: The trial court committed egregiously harmful error
    in failing to include a general article 38.22, § 7 warnings
    instruction (involving warnings given under §§ 2 and 3) ................ vii

Statement of Facts .......................................................................... 1

Summary of the Argument ............................................................... 8

Argument and Authorities ................................................................ 9

    Standards of Review for Jury Charge Error ...................................... 10

    The Videotaped Interrogation and Related Testimony ...................... 13

    The Charge Conference, Objections and Rulings ............................. 19

    Why the Instructions Should Have Been Included ........................... 22

    Harm Analysis ............................................................................ 24

Conclusion and Prayer for Relief .................................................... 26

Certificate of Service .................................................................................. 27

Certification of Compliance ...................................................................... 27

iii

Index of Authorities

Cases

*Almanza v. State*, 686 S.W.2d 157
(Tex. Crim. App. 1984) (op. on reh'g) ................................................ 10, 11

*Bible v. State*, 162 S.W.3d 234 (Tex. Crim. App. 2005) ............................ 18

*Davidson v. State*, 25 S.W.3d 183 (Tex. Crim. App. 2001) ................... 17, 18

*De La Fuente v. State*, 432 S.W.3d 415
(Tex. App. – San Antonio 2014, pet. ref'd) ................................................ 13

*Neal v. State*, 256 S.W.3d 264 (Tex. Crim. App. 2008) ............................. 10

*Nonn v. State*, 69 S.W.3d 590
(Tex. App. – Corpus Christi 2001),
*aff'd*, 117 S.W.3d 874 (Tex. Crim. App. 2003) .......................................... 19

*Oursbourn v. State*, 259 S.W.3d 159 (Tex. Crim. App. 2008) ....... 12, 13, 21,
24, 25

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013) ..................... 10, 11

*Smith v. State*, 397 S.W.3d 765
(Tex. App. – San Antonio 2013, no pet.) .................................................... 12

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007) ......................... 11

*Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013) ........................ 22

*Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008) ......................... 11

*Williams v. State*, 547 S.W.2d 18 (Tex. Crim. App. 1977) .......................... 10

Statutes, Rule, and Legislative History

Acts 2001, 77th Leg. Reg. Sess., ch. 990, § 2 ............................................... 18

Enrolled Bill Analysis to H.B. No. 553, 77th Leg. Reg. Sess. (2001) .......... 18

Tex. Code Crim. Pro. art. 38.22 ...................................... 8, 17, 19, 21-23, 25

Tex. Code Crim. Pro. art. 38.22, § 2  ............................................... vii, 9, 12

Tex. Code Crim. Pro. art. 38.22, § 2(a)(5) ............................................. 16-18

Tex. Code Crim. Pro. art. 38.22, § 3 ................................................ vii, 9, 12

Tex. Code Crim. Pro. art. 38.22, § 3(a)(2) .................................................. 16

Tex. Code Crim. Pro. art. 38.22, § 3(e)(2) .................................................. 18

Tex. Code Crim. Pro. art. 38.22, § 6 ....................................... vii, 8, 9, 12, 24

Tex. Code Crim. Pro. art. 38.22, § 7 .......................... vii, 8, 9, 12, 13, 21, 25

Tex. Code Crim. Pro. art. 38.22, § 8 ......................................................... 17

Tex. Code Crim. Pro. art. 38.22, § 8(2) .......................... 8, 17, 20, 22, 23, 25

Tex. Code Crim. Pro. art. 38.23 ......................................... 9, 12, 20-22, 25

Tex. Code Crim. Pro. art. 38.23(a) ........................................................... 12

Tex. R. App. P. 9.4(i)(1) ......................................................................... 27

# No. 04-14-00618-CR

## IN THE FOURTH COURT OF APPEALS
## AT SAN ANTONIO, TEXAS

### THOMAS LITTLE

Appellant

vs.

### THE STATE OF TEXAS

Appellee

On Appeal from the 25th District Court
of Guadalupe County, Texas
Hon. William D. Old, III Presiding
Trial Court Cause No. 14-0698-CR-C

### APPELLANT'S BRIEF

Statement of the Case

This is an appeal from a judgment of conviction by a jury for two

counts: (1) first degree felony of burglary of a habitation by committing or

attempting to commit kidnapping, and (2) second degree burglary of a

habitation by committing or attempting to commit either theft or assault.

Clerk's Record ("CR") 4-5 (indictment); 56, 58 (jury verdicts); and 84-86

(judgment). The jury's punishment verdict was twenty (20) years imprisonment on both counts and no fine. CR 62-63. The written judgment of conviction includes these terms, states that the sentences shall run concurrently, and imposes $514 in court costs. CR 84.

## Statement Regarding Oral Argument

Appellant's counsel believes that the record and briefs in this case will be sufficient for this court to determine the issues raised without the need for oral argument. However, appellant's counsel will appear to argue if the panel assigned to hear this case sets this case for submission on argument.

## Issues Presented

Issue 1: The trial court erred in refusing appellant's request for a general article 38.22, § 6 voluntariness instruction.

Issue 2: The trial court committed egregiously harmful error in failing to include a general article 38.22, § 7 warnings instruction (involving warnings given under §§ 2 and 3).

## Statement of Facts

Appellant Thomas Little was indicted in 2012 under the case number 12-1784-CR, which is the case number listed in vols. 2-4 of the Reporter's Record. According to Reporter's Record ("RR") vol. 5, p. 4, l. 3-6, this indictment charged aggravated robbery. Mr. Little was later indicted on April 3, 2014 for the case on appeal in a two count indictment listing two offenses that occurred on or about June 21, 2012: (1) first degree felony burglary of a habitation by attempting to commit or committing kidnapping; and (2) second degree felony burglary of a habitation by committing or attempting to commit either theft or assault. CR 4-5. The trial in August 2014 proceeded only on this indictment, not the 2012 indictment. RR vol. 6, p. 5, l. 7-9 and vol. 7, p. 4, l. 3-7.

On December 1, 2011, a court order in suit affecting parent-child relationship was signed naming Mary Gilson sole managing conservator of her grandson, S.W., and the child's mother, Melissa "Muffy" Weyman, was named possessory conservator. State Ex. 1, at RR vol. 11, pp. 11-38. Ms. Weyman was represented by attorney Edward Schroeder, *id.*, at RR vol. 11, pp. 11 and 38, who would later appear as appellant's attorney in the videotaped custodial interrogation discussed in this brief.

1

On June 21, 2012, Mary Gilson and her 6 ½ year old grandson S.W., were at her home in Selma, Guadalupe County, Texas when three men came into Ms. Gilson's home, surprising her. RR vol. 8, p. 8, l. 1-6 and pp. 12-17. One of the men told Ms. Gilson that they worked for the district attorney's office and were there to arrest her son (not present in the home) for child pornography. RR vol. 8, p. 17, l. 2-10. Ms. Gilson suffered some injuries as a result when she attempted to leave the house and was restrained. RR vol. 8, pp. 15-16. None of these three men had Ms. Gilson's consent to enter her house. RR vol. 8, p. 19, l. 5-8.

One of the men (Adams) gave S.W. a cell phone and told him to "talk to your mommy," and this conversation lasted a few minutes. RR vol. 8, p. 23, l. 9-17. A knock came at the back door, Adams answered the knock, and a woman wearing a "big black cloth hood" entered Ms. Gilson's home. RR vol. 8, p. 23, l. 23 to p. 24, l. 11. The woman spoke with Adams, and then came to where S.W. was and took him to the back dining room and stood there with him. RR vol. 8, p. 24, l. 12-18. Ms. Gilson believed that she was S.W.'s mother, Melissa "Muffy" Weyman, based on her build. RR vol. 8, p. 31, l. 21 to p. 32, l. 7, and p. 64, l. 20-23. Ms. Weyman also testified at trial, and informed the jury that Ms. Gilson recognized her even though her face

2

was covered.  RR vol. 8, p. 197, l. 23-25.

Another knock came from the back door, and a tall, older man wearing a back cloth hood over his head entered, but Ms. Gilson could see that he had a grey pony tail sticking out from under the hood.  RR vol. 8, p. 24, l. 18-23.  This man came to Ms. Gilson and told her that she was a bad person because she would not let Ms. Weyman see her son S.W., and he was close enough to Ms. Gilson that she thought he would hit her.  RR vol. 8, p. 25, l. 10-23.  Ms. Gilson recognized the man's voice as someone she had spoken to on the phone at least ten times previously when she had conversed with Ms. Weyman concerning S.W.  RR vol. 8, p. 27, l. 12 to p. 28, l. 4.  The woman Ms. Gilson believed to be S.W.'s mother spoke with the hooded man with the grey pony tail, and both she and S.W. left Ms. Gilson's house through the back door.  RR vol. 8, p. 32, l. 8-20.  Ms. Weyman, who pleaded guilty and received ten years deferred adjudication pursuant to a plea agreement, implicated herself and appellant Little.  RR vol. 8, pp. 185-239.

After Ms. Weyman left with S.W., the hooded man with the pony tail went through several rooms, took a cloth from the bedroom, wrapped a long gun and ivory figurine in the cloth, and left with those items.  RR vol. 8, pp. 35-37.  The other men took several large trash bags of clothes, electronics,

3

games, videos and an antique short gun. RR vol. 8, pp. 37-38. About $400 in cash was also taken, as well as between $7,000 and $9,000 worth of jewelry. RR vol. 8, pp. 50-51. Ms. Gilson believed that the hooded man with the pony tail was in charge of Adams, and that Adams was in charge of the other two men. RR Vol. 8, pp. 39-40. Adams and the other two men (Jones and Beesler) were not masked, and Ms. Gilson was able to identify all three of those men. RR vol. 8, pp. 20-21 and 23-24.

The Selma Police Department responded to Ms. Gilson's 911 call within minutes, and an Amber Alert for S.W. was issued. RR vol. 8, pp. 44-45. At about 10 or 11 p.m. that same evening, Gerold Watson received a phone call from Thomas Little asking if Muffy Weyman could stay at Watson's son's condominium that night. RR vol. 8, p. 82. The following morning, June 22, Mr. Little came to Mr. Watson's residence and told Watson that Little and Ms. Weyman had picked up a child, and Little asked Watson to take $200 in an envelope to Muffy Weyman at Watson's son's condominium. RR vol. 8, pp. 83-84. Mr. Watson saw Ms. Weyman and S.W. arriving at the condominium at about 2 p.m., and shortly thereafter, the police knocked on the door, Watson let them in, and both he and Muffy Weyman were arrested. RR vol. 8, pp. 87-89.

4

Selma Police Department Sergeant Keith Osborn investigated this incident and conducted a field interview with Mr. Little at his residence on June 22, 2012. RR vol. 8, pp. 136-137. At this time, Little had a very thin pony tail, which matched Ms. Gilson's description of the pony tail worn by one of the intruders. RR vol. 8, p. 142. Mr. Little gave consent to search the premises and his vehicle, and a cell phone wrapped in lead, which was a piece from the roof of Little's home, was found in Little's vehicle. RR vol. 8, p. 144-145. Sgt. Osborn was one of three officers who conducted a custodial interrogation at the Selma Police Dept. of Mr. Little after his arrest, with the other two officers being FBI Special Agents Carlisle and Martinez, and attorney Edward Schroeder, who represented Ms. Weyman in the family law proceeding from 2011, was also present as Little's attorney. RR vol. 8, pp. 146-147. When this interview occurred, Mr. Little's pony tail was gone. RR vol. 8, p. 147, l. 14-18. Although Sgt. Osborn described FBI agent Carlisle as the primary questioner, RR vol. 8, p. 147, l. 11-13, all three officers questioned Little during videotaped interview contained on State's Exs. 43 and 44, containing almost three hours of recorded statements.

FBI Special Agent Michael Carlisle informed the jury that once his agency learned of the Amber Alert, he went to the Selma Police Department

5

to offer assistance in the investigation. RR vol. 8, p. 255, l. 8 to p. 256, l. 4. Agent Carlisle was part of the team that located Ms. Weyman and S.W. RR vol. 8, p. 257, l. 8-24. Agent Carlisle arrested Ms. Weyman, and she told Carlisle about attorney Schroeder, who had represented her in the 2011 family law case, and who also knew appellant Little. RR vol. 8, p. 257, l. 25 to p. 259, l. 2. Agent Carlisle contacted attorney Schroeder, and at some later time, Schroeder called back and informed Carlisle that appellant Little was at Schroeder's residence, and Little was arrested there by FBI agents Carlisle and Martinez the day after S.W. was recovered. RR vol. 8, p. 259.

During the three hour videotaped custodial interview between appellant, Selma Police Dept. Sgt. Osborn, and FBI agents Carlisle and Martinez (State's Ex. 43 and 44), Mr. Little stated through most of the interview that it was Adams who planned the burglary and kidnapping, and that Little did not learn of it until he received a call from Adams stating that S.W. was crying and asking Little to have Ms. Weyman speak to S.W. on the phone. However, near the end of the interview, at about the 30 second mark of State's Ex. 44, Mr. Little admitted to "changing the plan for [S.W.]'s sake." Shortly after that, Little stated that he needed to have his legs elevated, as there were sores on both legs. State's Ex. 44, at approx. 5

6

min. mark. The interrogation concluded at the 13 min., 45 sec. mark of State's Ex. 44. The details concerning the failure to give all five warnings required by Texas statute will be discussed below in the argument section of this brief to avoid repetition.

The jury charge allowed the jury to consider Mr. Little guilty either as a party or individually under both of the burglary counts charged. After hearing the testimony and judging the credibility of the witnesses, the jury found appellant guilty of both counts of kidnapping as charged in counts one and two of the 2014 indictment. CR 56 & 58. After hearing punishment evidence, which included appellant's testimony, RR vol. 10, pp. 77-103, the jury assessed a punishment verdict of twenty (20) years imprisonment and no fine on both counts. CR 62-63. The trial court's Judgment of Conviction by Jury imposes these terms, states the sentences shall run concurrently, and assesses $514 in court costs. CR 84-86. *See also* RR vol. 10,

Appellant's retained trial counsel timely filed a notice of appeal, CR 71, and filed a motion to withdraw, CR 68-69, which was granted by the trial court. CR 83. This writer was appointed to represent appellant on appeal, after the deadline for filing a motion for new trial or other post-trial motion had expired. CR 88. The trial court's signed certification of defendant's

right of appeal is at CR 76.

## Summary of the Argument

Appellant's request for a general article 38.22, § 6 voluntariness instruction should have been granted because the evidence raised an issue as to whether the videotaped statement was voluntary. Not all five of the warnings required by art. 38.22 were read to Mr. Little, and in fact, Little was told that he could terminate the interview only if he answered questions outside his attorney's presence, which conflicts with the statute's warning that a defendant may terminate the interview at any time. Just after Mr. Little made the incriminating statement that he changed the plan for S.W., he stated that he needed to have his legs elevated due to sores on both legs, raising an issue of whether this statement was voluntary, or was the result of being in pain from leg sores. Some harm occurred from the failure to include this instruction, and the case should be remanded for a new trial.

Additionally, the failure to inform Little that he had the right to terminate the interview at any time, regardless of whether he was answering questions in his attorney's presence, should have warranted inclusion of an article 38.22, § 7 warnings instruction, because the interview was conducted by state and federal law enforcement officers, making the art. 38.22, § 8(2)

8

provision permitting admission of statements given by federal officers in compliance with federal law inapplicable. While appellant's trial counsel requested an instruction concerning the adequacy of the warnings, misnaming it an art. 38.23 instruction when it is actually an art. 38.22, § 7 instruction, trial counsel did not make the argument raised in this appeal that the warnings were inadequate because both state and federal law enforcement officials conducted Little's custodial interrogation. Therefore, this writer believes that the egregiously harmful jury charge error standard of review must be shown to obtain a reversal. This more difficult standard of review for jury charge error is met because had Mr. Little known that he could terminate the interview at any time, he could have stopped the interview when his legs hurt before he made the incriminating statement that he changed the plan for S.W. The case should be remanded for a new trial on this basis as well.

Argument and Authorities

Issue 1: The trial court erred in refusing appellant's request for a general article 38.22, § 6 voluntariness instruction.

Issue 2: The trial court committed egregiously harmful error in failing to include a general article 38.22, § 7 warnings instruction (involving warnings given under §§ 2 and 3).

9

Standards of Review for Jury Charge Error

"It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *See Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977), and *Reeves v. State*, 420 S.W.3d 812, 818 n.32 (Tex. Crim. App. 2013). When reviewing charge errors, an appellate court must undertake a two-step review: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The degree of harm required for reversal depends on whether that error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm." *Almanza*, 686 S.W.2d at 171.

By contrast, unobjected-to charge error requires reversal only if it resulted in "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008). If the defendant does not present a proposed jury instruction, any potential error in the charge is reviewed only for "egregious harm" under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g). ". . . [I]f no proper objection was made at trial and the

10

accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial' – in short, egregious harm." *Id.* Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). An appellate court places no burden of proof or persuasion to show egregious harm on either the appellant or the State. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Before an appellate court can find egregious harm, the record must show that the defendant has suffered actual, rather than merely theoretical, harm from the jury-charge error. *Almanza*, 686 S.W.2d at 174. Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Regardless of whether an objection was made, ". . . the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171 (Tex. Crim.

11

App. 1985) (op. on reh'g).  *See also Smith v. State*, 397 S.W.3d 765, 771

(Tex. App. – San Antonio 2013, no pet.).  Egregious harm must be

determined on a case-by-case basis.  *Smith*, 397 S.W.3d at 771.

> Under Texas statutory law, there are three types of instructions that relate to the taking of confessions:  (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction.  In essence, the Section 6 "general" instruction asks the jury: " Do you believe, beyond a reasonable doubt, that the defendant's statement was voluntarily made?  If it was not, do not consider the defendant's confession."  The Section 7 instruction sets out the requirements of 38.22, § 2 or § 3 and asks the jury to decide whether all of those requirements were met.

*Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008).[1]  As this

court recently noted:

> Section 6 of article 38.22 provides that when, outside the jury's presence, the trial court has made a finding as a matter of law and fact that the statement was voluntarily made, as occurred here, evidence pertaining to voluntariness may still be presented to the jury.  Tex. Code Crim. Proc. Ann. art. 38.22, § 6.  When the issue of voluntariness is raised by the evidence, the trial judge must instruct the jury that unless it believes beyond a reasonable doubt that the statement was voluntarily made, it must not consider it for any purpose.  *Id.* art. 38.22, § 6.  When a defendant's statement was the result of custodial

---

[1]  The *Oursbourn* court's discussion of what is needed for a specific art. 38.23 exclusionary-rule instruction is not discussed because the evidence in this case does not show that any coercion or threats were applied to Mr. Little during the Selma Police Dept. station house custodial interview.

12

> interrogation, he is also entitled to an instruction under section 7 of article 38.22 if the trial evidence raises the issue of whether he was adequately warned of his rights and knowingly and intelligently waived his rights. *Id.* art. 38.22, § 7; *see Oursbourn v. State*, 259 S.W.3d 159, 175-76 (Tex. Crim. App. 2008).

*De La Fuente v. State*, 432 S.W.3d 415, 425-426 (Tex. App. – San Antonio 2014, pet. ref'd).

The Videotaped Interrogation and Related Testimony

Although the investigation of the burglary and abduction was being handled by the Selma Police Department, the Federal Bureau of Investigation ("FBI") offered to assist Selma Police with the investigation, according to FBI Special Agent Michael Carlisle's testimony. RR vol. 8, pp. 255-256. The day after S.W. was recovered, Mr. Little was arrested by FBI Special Agents Carlisle and Martinez, after attorney Schroeder had called agent Carlisle to state that appellant was at Schroeder's residence. RR vol. 8, pp. 258-260. Little was asleep upstairs on the couch, was awakened by the agents, handcuffed, arrested and "Mirandized." RR vol. 8, p. 260, l. 3-8. Agent Carlisle informed the jury that attorney Schroeder had been involved with Ms. Weyman in the custody battle which led to the December 2011 order granting primary custody of S.W. to Ms. Gilson and restricting Ms. Weyman's visitation with S.W., State's Ex. 1 at RR vol. 11, pp. 11-38, and

13

that attorney Schroeder was a personal friend of Mr. Little's. RR vol. 8, p. 260, l. 8-15. Agent Carlisle asked appellant if attorney Schroeder was going to represent him, and Little replied yes. RR vol. 8, p. 260, l. 16-18. Carlisle confirmed this information with Schroeder, and Schroeder was asked to follow appellant and the agents to the Selma Police Department, with Carlisle telling Schroeder that appellant would not be questioned until he was taken to an interview room. RR vol. 8, p. 260, l. 19-25 and pp. 263-264.

State's Exs. 43 and 44 are DVD recordings of the custodial interview of appellant at the Selma Police Department, with exhibit 43 lasting 2 hours, 37 minutes and 20 seconds, and exhibit 44 containing the final 18 minutes and 56 seconds, although the interview ends at 13 min., 48 sec. Appellant Thomas Little (top center of video) was handcuffed, and his attorney Edward Schroeder (top right of video near door) were present. The interview was conducted by federal and state law enforcement officers: FBI Special Agents Carlisle and Martinez, and Selma Police Department Officer Osborn. Agent Carlisle is seen in the corner away from the door (bottom left corner of the video), with agent Martinez to his right (bottom right corner of video), and Selma Police Dept. Sgt. Osborn to Carlisle's left (middle left of video). RR vol. 8, p. 264, l. 5-18.

14

Beginning at about the 0:50 mark (50 seconds) of State's Ex. 43, FBI agent Carlisle read the "Miranda" warnings to Little, with Selma Police Dept. Sgt. Osborn present, and Little stated that he understood them.[2] However, agent Carlisle admitted that he did not read the fifth warning required by Tex. Code of Crim. Pro. art. 38.22, that a defendant has the right to terminate a custodial interview at any time, because agent Carlisle stated that he told Little when he was arrested at attorney Schroeder's house that if Little chose to answer questions outside his attorney's presence, he could stop the interview at any time. RR vol. 9, p. 9, l. 7-20.[3] However, this unrecorded warning does not qualify as sufficient under Texas law firstly

---

[2]     Agent Carlisle identified those rights to the jury in his testimony as, ". . . you have the right to remain silent; anything you say can and will be used against you in a court of law; you have the right to have an attorney with you while you're being questioned, and should you not be able to afford an attorney, one will be appointed for you. Should you begin answering questions outside the presence of your attorney and then decide to stop, you can do so." RR vol. 8, p. 262, l. 14-21.

[3]     Q.     In Texas, we have a fifth prong that says he has the right to terminate the interview at any time, and you did not tell him that right.

        A.     On the interview, on the tape, we did not go back through that because his attorney was present at the time. I advised the right for him always that says if you choose to answer a question outside of the presence of your attorney, you have the right to terminate that interview at any time. And normally – and I usually don't read it as a mantra. Normally, I actually sit down and explain it to individuals and explain how that works out. That was done at Mr. Schroeder's house in detail, because at the time, there was an issue of the role Mr. Schroeder was going to play.

15

because it is not on the recorded video as required by Tex. Code Crim. Pro. art. 38.22, § 3(a)(2)[4], but occurred according to agent Carlisle's testimony earlier that evening at attorney Schroeder's house when Little was arrested. Secondly, this warning does not tell Mr. Little that "he has the right to terminate the interview at any time," [art. 38.22, § 2(a)(5)][5]; instead, agent Carlisle told Little that he could stop questioning only if he was answering questions outside his attorney's presence. Thus, Little did not know that he could stop questioning at any time, even when his attorney was in the interview room during the interrogation.

Agent Carlisle testified that the "Miranda" warnings he gave to appellant were sufficient under federal law to advise defendants of their rights before they can be questioned while in custody, RR vol. 9, p. 10, l. 18-22, which was an attempt to have this videotaped statement become

---

[4] "No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: . . . (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning. . . ."

[5] "No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that: (a) the accused, prior to making the statement, . . . received from the person to whom the statement is made a warning that: . . . (5) he has the right to terminate the interview at any time[.]"

16

admissible under Tex. Code Crim. Pro. art. 38.22, § 8(2):

> Notwithstanding any other provision of this article, a written, oral, or sign language statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding in this state if: . . . (2) the statement was obtained by a federal law enforcement officer in this state or another state and was obtained in compliance with the laws of the United States.

If the only interrogators had been FBI agents, then appellant's video statement would be admissible under art. 38.22, § 8(2) since the "Miranda" warnings read by FBI agent Carlisle complied with federal law. However, appellant argues in this appeal that because Selma Police Dept. Sgt. Osborn was also present in the interrogation room, and participated by asking Mr. Little questions, the statement was taken by both federal and state law enforcement officers; therefore, the fifth warning in art. 38.22, § 2(a)(5) concerning the right to terminate the interview at any time should have been read to Little, and the § 8(2) exception should not apply to make this statement admissible.

The Texas Legislature added § 8 to art. 38.22 in the 2001 legislative session to supercede the Court of Criminal Appeals' decision in *Davidson v. State*, 25 S.W.3d 183, 186 (Tex. Crim. App. 2001). That opinion reversed and remanded for a harm analysis by holding that strict compliance with art.

17

38.22 was required for a defendant's statement to be admissible, meaning that all five warnings from that statute must be given; therefore, the failure of a federal agent in Montana to read the fifth warning required by art. 38.22, § 2(a)(5) (the right to terminate interview) when the defendant was "Mirandized," which complied with both Montana and federal law, failed to strictly comply with the Texas statute, so the statements should not have been admitted. *See Bible v. State*, 162 S.W.3d 234, 237 (Tex. Crim. App. 2005), *citing* Acts 2001, 77th Leg. Reg. Sess., ch. 990, § 2. *See also* Enrolled Bill Analysis to H.B. No. 553, 77th Leg. Reg. Sess. (2001), which discusses the facts in *Davidson* and concludes:

> Although the statement was admissible under Montana law and the Texas trial court ruled the statement admissible, the Court of Criminal Appeals of Texas ruled that the statement was inadmissable because it did not comply with Texas law and remanded the case. House Bill 553 provides that a statement is admissible in a criminal proceeding in Texas if the statement was obtained in another state and was obtained in compliance with the laws of that state or this state or the statement was obtained by a federal law enforcement officer in Texas or another state and was obtained in compliance with the laws of the United States.

*Id.*, available at

www.capitol.state.tx.us/tlodocs/77R/analysis/html/HB00553F.htm, accessed February 16, 2015. While art. 38.22, § 3(e)(2) permits admission of a

18

defendant's statement if the warnings given were the "fully effective equivalent" of the five warnings listed in the statute, the failure to inform a defendant of the right to terminate the interview at any time does not constitute a fully effective equivalent of the statutory warnings (since that warning was missing), and does not constitute substantial compliance with art. 38.22. *Nonn v. State*, 69 S.W.3d 590, 593 (Tex. App. – Corpus Christi 2001), *aff'd*, 117 S.W.3d 874 (Tex. Crim. App. 2003).

<u>The Charge Conference, Objections and Rulings</u>

Before the start of FBI Special Agent Carlisle's testimony and the playing of State's Exs. 43 and 44, appellant Little notified the trial court that he would object to the admission of the video statement because the fifth warning of art. 38.22 concerning the right to terminate the interview at any time was not read to Mr. Little:

> [Appellant's trial counsel]: Judge, there's – before we start with the video, because I'm assuming we're about to put in the video, okay. I have to make an objection. The agent who reads his rights does not read the Texas rights. He reads the fourth and not the fifth, okay?
>
> [Prosecutor]: But one, we –
>
> The Court: Well, wait, wait, wait. Wait. That's pretty good.
>
> [Appellant's trial counsel]: Okay. So under 38[.]22, Texas has a fifth right, which is number 5, he has the right to terminate the

19

interview at any time.  That right was not read when the agent read the rights.  [¶] Now, I have to – as an officer of the court, I have to inform the Court that the case law out there has said that if its an officer from another state or a federal officer, that if they read the rights as they know them, that it can be found to be admissible, okay?  [¶] And there's also, of course, case law that says substantial compliance suffices.  I'm not sure that substantial compliance means you can leave off a whole rung.  But since that fifth right is unique to Texas, I believe that – that since he's a federal agent, he's – that it would still be admissible.  But I need to object to it and preserve it for appellate purposes.

RR vol. 8, p. 247, l. 17 to p. 248, l. 16.  The prosecutor responded by arguing that art. 38.22, § 8(2) would permit admission of this statement because it was taken by a federal officer in compliance with federal law, and that Mr. Little's attorney was present when the "Miranda" warnings were read to Little.  RR vol. 8, p. 248, l. 17 to p. 249, l. 13.  The trial court overruled appellant's objection to admission of the videotaped statement based on art. 38.22, § 8(2), stating that the court anticipated the evidence to be that the warnings were made "in substantial compliance with the laws of the United States."  RR vol. 8, p. 249, l. 14 to p. 250, l. 3.

Appellant then asked the court for an article 38.23 instruction in the jury charge instructing the jury that "if the jury believes that the statement was not – the rights weren't written – written properly, they can have the choice to not consider that evidence."  RR vol. 8, p. 250, l. 4-12.  This is

20

actually an art. 38.22, § 7 instruction based on the *Oursboun* language quoted at page 12 of this brief. The prosecutor responded, "And we have to instruct them that federal law is different, and he's in substantial compliance with federal law, when you deed – the test is changed when it is [a] federal officer. It's not strict compliance with 38[.]22, because it's a federal agent." RR vol. 8, p. 250, l. 13-18. The trial court responded that it appeared that art. 38.23 required a mandatory instruction because the appellant had raised the issue, and that one should be included. RR vol. 8, p. 250, l. 19 to p. 251, l. 16. However, the trial court reversed this decision at the formal charge conference two days later, stating that ¶ 4 of the proposed charge would be removed:

> [The Court]: And then we go to – we go to Paragraph 4, which addresses the voluntariness, or the – or really the admissibility of the statements by the Defendant pursuant to Article 38[.]22, and then additionally 38[.]23. There is not an issue of voluntariness. That was not raised. The federal officer was in compliance under the articles of the Code of Criminal Procedure; therefore, the Court finds that the paragraph is unnecessary, so that may be removed.

RR vol. 10, p. 6, l. 14-22. After that paragraph was removed and the charge was finalized, appellant again objected "to the exclusion of the 38[.]22 instruction[,]" as well as to another portion of the charge not discussed in this appeal, and the trial court denied both those objections. RR vol. 10, p.

21

9, l. 6-13.  The August 7, 2014 docket entry states in part, "∆ objected to . . . exclusion of language pursuant to 38.22 and 38.23."  CR 3.  Although findings of fact and conclusion of law are required, *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013), none were requested.  Appellant has filed a separate motion to abate this appeal pursuant to *Vasquez* for entry of those findings and conclusions on the same date that this brief is filed.

The language of paragraph 4 of the proposed charge that was stricken is not contained in the record, but this writer assumes that it was the standard jury instructions for art. 38.22 and 38.23 contained in the pattern jury charges.  There was also no discussion of whether the video statements were voluntary or taken in compliance with art. 38.22 in the closing arguments to the jury, as those instructions were not included in the charge.

Why the Instructions Should Have Been Included

The trial court erred in failing to give appellant's requested instructions on whether the videotaped statement complied with these statutes. Although trial counsel believed that art. 38.22, § 8(2) would excuse FBI agent Carlisle's failure to read the fifth statutory warning that Mr. Little could terminate the interview at any time, since agent Carlisle was a federal officer and the "Miranda" warnings he read complied with federal law,

22

appellate counsel disagrees with this interpretation because the interview was conducted by both federal and state officers in Texas, and Selma Police Dept. Sgt. Osborn was present when the "Miranda" rights were read to Mr. Little, and Sgt. Osborn could have informed Little that he also had the right to terminate the interview at any time as required by art. 38.22. The purpose of enacting art. 38.22, § 8(2) was to permit admissibility of out-of-state confessions that complied with that state's laws, or confessions to a federal law enforcement officer that complied with federal law. That purpose is not achieved in the case at bar because Mr. Little's station house custodial interrogation at the Selma Police Department was taken by both state and federal law enforcement officers, while that subsection only applies to statements "obtained by a federal law enforcement officer in this state . . . obtained in compliance with the laws of the United States." Tex. Code Crim. Pro. art. 38.22, § 8(2). Because Selma Police Dept. Sgt. Osborn was present when the warnings were read by FBI Special Agent Carlisle, which did not include the fifth warning unique to Texas that Little could terminate the interview at any time, the video statement contained on State's Exs. 43 and 44 did not comply with art. 38.22, and did not become admissible under § 8(2). Accordingly, the jury should have been instructed to consider

23

whether the video statements in State's Exs. 43 and 44 complied with these statutes, and it was error for the trial court to refuse appellant's requests for those instructions.

Harm Analysis

Appellant requested a general voluntariness instruction, which *Oursbourn* names as an art. 38.22, § 6 voluntariness instruction, so only some harm needs to be shown to obtain a reversal. Not all five warnings required by the statute were read to Little, and in fact, he was told that he could terminate the interview only if he answered questions outside his attorney's presence, which conflicts with the statute's mandate that the interview may be terminated by the defendant at any time. Shortly after Mr. Little made the incriminating statement that he changed the plan for S.W., he advised that he needed to have his legs elevated due to sores on both legs, which raised an issue concerning the voluntariness of appellant's statement, or whether this admission was made because he was in pain from leg sores. Because the evidence did raise an issue concerning voluntariness, some harm occurred in the trial court's refusal to grant appellant's request for an article 38.22, § 6 general voluntariness instruction.

While trial counsel also requested an instruction concerning the

24

adequacy of the warnings given, which counsel named an art. 38.23 instruction, but which according to *Oursbourn* is actually an art. 38.22, § 7 warnings instruction, counsel believed that because an FBI agent read warnings that complied with federal law, the video statements would be admissible under art. 38.22, § 8(2). On appeal, this writer is arguing that section should not render the statement admissible, since the interview was conducted by both state and federal officers. Since this argument was not made to the trial court, appellate counsel believes that the egregious harm standard of review for failing to include this instruction must be met to obtain a reversal. The failure to include an instruction to the jury that it must disregard the videotaped statement if the warnings given did not comply with art. 38.22 affected the very basis of appellant's case because appellant's videotaped statement was a valuable piece of evidence since it contained an admission by Little that he changed the plan for S.W.'s sake, which contradicted his earlier statements that he did not plan this enterprise and that he did not know it was occurring until he received a call from Adams asking Ms. Weyman to speak on the phone with S.W. It is true that the testimony of Ms. Gilson and Ms. Weyman also supports the jury's verdict, but that portion of the videotaped statement was also damaging to

25

appellant's defense.   Appellant therefore believes the failure to include an art. 38.22, § 7 warnings instruction constituted egregiously harmful error.

Conclusion and Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, appellant THOMAS LITTLE prays that this court grant one or both of the jury charge error issues presented, and reverse and remand for a new trial if either issues are granted.

Respectfully submitted,

*/s/ Gregory Sherwood*

GREGORY SHERWOOD
Attorney at Law
P.O. Box 200613
Austin, Texas 78720-0613
(512) 484-9029
Email: gsherwood@mail.com
State Bar No. 18254600

Court-Appointed Attorney on Appeal
for Appellant Thomas Little

Certificate of Service

I hereby certify that a true copy of this document was served by email to the 25th Judicial District Attorney's Office, 211 W. Court Street, Suite 260, Seguin, Texas 78155 at the following email address: calesse.carter@co.guadalupe.tx.us on February 16, 2015.

*/s/ Gregory Sherwood*

Certification of Compliance

According to the WordPerfect program used to create this document, there are 6,259 words in this brief, excluding the portions listed in Tex. R. App. P. 9.4(i)(1).

*/s/ Gregory Sherwood*