

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00206-CR

RICHARD D. DONALDSON                                                              APPELLANT

V.

THE STATE OF TEXAS                                                                       STATE

----------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1293976D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Richard D. Donaldson appeals his conviction for continuous sexual abuse of a young child.  *See* Tex. Penal Code Ann. § 21.02(b), (h) (West Supp. 2016).  In two issues, Donaldson argues that the evidence is insufficient to

---

[1]*See* Tex. R. App. P. 47.4.

support his conviction and that the trial court reversibly erred by admitting statements the victim made to her mother's friend.  We will affirm.

## II. FACTUAL BACKGROUND

Because Donaldson challenges the sufficiency of the evidence to support the timing element of the offense as well as the State's designation of the outcry witness, we summarize the testimony from each of the witnesses who testified at trial.  The State's witnesses included the victim, Ann;[2] Mother; Mother's friend Audrey; the nurse who examined Ann; and the forensic interviewer who interviewed Ann.

Ann, who was thirteen years old at the time of the trial,[3] testified that Donaldson and his son Armani moved in with her and Mother when they lived in a duplex on Hulen Park Circle in Fort Worth in 2011.  The first sexual abuse occurred at the duplex after spring break but before school concluded for the summer in 2011.  Ann said that Donaldson came into her room; woke up both her and Armani, who was sleeping on a pallet under her raised bed; told them a story; and then left her room.  Donaldson came back, walked up the steps to Ann's bed, lay next to her, started rubbing her thighs, and told her to promise not to tell.  Ann asked what she was not supposed to tell, and Donaldson said,

---

[2]To protect the anonymity of the child victim, we use a pseudonym.  *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[3]The trial took place approximately four years after the events at issue.

2

"[N]ever mind." Donaldson walked out of Ann's room and then came back. He walked up the stairs to her bed, put his knees on her bed, pulled down her jeans and underwear, and started licking her private area where she "pee[d] out of." Donaldson left Ann's room to check to see if Mother was still asleep on the couch in the living room and then returned to Ann's bedroom. Donaldson licked Ann's private area again and tried to put "his thing"[4] inside of her private area. Ann testified that it hurt. Donaldson left Ann's room, then returned to her room, and put "his thing" in her mouth. Ann testified that "white stuff" came out of "his thing" and that the "white stuff" got on her face. Donaldson went to go get something and wiped the "white stuff" off of Ann's face. Donaldson told Ann to "pinky promise" not to tell anyone and then left her room for the rest of the night. Ann testified that she did not tell anyone right after the event because she was scared.

A second event occurred in Wichita Falls when Donaldson, Mother, Armani, and Ann went to visit Donaldson's grandmother for Easter.[5] They stayed at Donaldson's grandmother's house. While Mother was taking a shower, Donaldson came into the den where Ann was, pulled down her pants, started

---

[4]Ann stated his "thing" was "[w]here he pees out of."

[5]The trial court took judicial notice that Easter fell on April 24 in 2011. Ann initially testified that this was the third event but clarified on cross-examination that this was the second event; she was positive that the duplex was the first event.

3

licking her private area, and then walked out without saying anything to Ann. Ann did not tell anyone right after this happened because she was still scared.

A third event occurred around May 2011 when they lived in a house on Carolina Drive.[6] Donaldson, Armani, and Ann were sitting in Armani's room; Ann was watching Armani play a basketball game on his PlayStation. Ann left to go to her bedroom to lie down. Donaldson came in Ann's room, pulled down her pants, licked her private area, and then tried to stick "his thing" inside of her private area. Ann told Donaldson to stop because he was hurting her. He said that he was trying to teach her a lesson so that she would know when to tell a guy to stop in case a guy ever tried to do that to her. He then left Ann's room. During this incident, Mother was in her room, and Armani was in his room. Ann did not tell anyone right after this happened because she was still scared.

After Donaldson moved out, Ann decided to tell Mother, Audrey, and Mother's sister about the sexual abuse. Ann testified at trial that she told Mother that Donaldson had touched her private area and had licked her private area but that she did not tell Mother about Donaldson putting "his thing" in her private area.

Mother testified that she had noticed during April through June of 2011 that Ann had "started getting attitudes a lot" and had started wanting to "stay to

_____

[6]Although this address is also referred to in the record as Caroline Street, Carolina Drive appears to be the correct description and is what we use throughout the opinion.

4

herself." After Ann told Mother what had happened, Mother walked out of the room because she did not want to show too much emotion. Mother testified that she did not tell Ann to make up a story about what Donaldson had done to her.

Audrey, who acted as an aunt figure to Ann, testified that she was at Mother's house one evening in July 2011 watching television with Mother, Ann, and Mother's sister. Ann wanted to tell Mother something, and Mother and Ann went to the master bedroom and talked for fifteen to twenty minutes. When Audrey heard Mother crying, she went back to the bedroom; before Audrey went in, Mother's sister told Audrey that Donaldson had touched Ann.

Audrey asked and received Mother's permission to talk to Ann. Audrey reassured Ann that they all loved her and then said that this was something serious and that she needed to tell the truth. Ann told Audrey that they (Donaldson, Armani, and Ann) were in Ann's bedroom at the duplex watching movies until they dozed off. Ann was in her bed, and Armani was on the floor. Donaldson woke up Ann and said that he had something to tell her; Ann asked what it was; and Donaldson said, "[N]ever mind." Ann fell back asleep. When Ann woke up, Donaldson was on top of her trying to insert his penis inside of her. Ann told Donaldson that he was hurting her and asked him to stop. Donaldson told Ann that she could not tell anybody because no one would believe her and because Donaldson would go to jail and not be able to see Armani. Afterwards, Ann heard the shower running. Ann told Audrey that Mother was asleep in the living room during this incident.

5

Brenda Crawford, formerly a nurse with Cook Children's Medical Center, testified that she examined Ann on July 26, 2011. Ann told Crawford that the events at issue occurred from May to June 2011. Crawford testified without objection to the following statement that Ann gave Crawford:

> She said, Ricky Demon Donaldson, has been molesting me. One time when we lived in the duplex, my brother and I were each in our beds. He, Ricky, came in and was tickling us, then he told us scary stories. My brother fell asleep. Ricky got in my bed under the covers. He started rubbing my privacies with his finger, . . . both over and under the clothes. Then he started licking my privacy.
>
> . . . .
>
> . . . He told me not to tell nobody. We did a pinky promise. I told my mommy because I didn't cross my heart. Other times he would touch me over my clothes, then take them off and lick me in my privacy. Then he laid me down and . . . took his thing out and put it in my privacy, then he started to put it in my butt hole,[7] but I started saying ouch, and he stopped. It happened once in the duplex, once at my grandma's house, and twice at the new house.

Ann also told Crawford that Donaldson had gotten "white stuff" on her shirt and bed and that Donaldson had cleaned it up with a towel.

Crawford testified that Ann's physical exam was normal. Crawford explained that she had not expected to find any injuries on Ann because the female sexual organ heals very quickly. Because the incidents had concluded more than ninety-six hours prior to the exam, Crawford did not attempt to collect DNA from Ann.

---

[7]Ann testified at trial that Donaldson had never tried to put "his thing" into her butt hole.

6

Carrie Paschall performed a forensic interview on Ann on July 26, 2011, prior to Crawford's examination of Ann. The DVD of the forensic interview was admitted without objection and was played for the jury. During the forensic interview, Ann gave detailed descriptions of each incident of sexual abuse and said that the act in Wichita Falls occurred at Easter; that the act at the duplex occurred in May before her sister's birthday, which was on May 5; and that the act at the house on Carolina Drive occurred a couple of days before June 30, 2011. Ann also said that Donaldson had made her suck "his thing" one time, that he had tried to put "his thing" in her butt hole one time, and that white stuff had come out of "his thing" one time and had gotten on her bed and on her shirt. Paschall testified that it is not uncommon for some of the peripheral details to fade away over time and that it is not uncommon for children to minimize things that seem more embarrassing to them once they are older. Paschall said that it is not always concerning when the story changes during adolescence if the victim previously told the story when she was younger.

The defense presented testimony from Donaldson's grandmother, Armani, and Donaldson. Donaldson's eighty-four-year-old grandmother Myrtle testified that Donaldson was approximately thirty-six years old in 2011. Myrtle testified that during Easter 2011, Mother and Ann stayed at Myrtle's granddaughter's house and that Donaldson stayed out all night partying with friends; he did not stay at her house.

Armani, who was eighteen years old at the time of the trial, testified that when he slept in Ann's bedroom at the duplex on Hulen Park Circle, it would not have been possible for someone to climb on Ann's noisy bed and not wake him up because he is a light sleeper. Armani did not remember a time when Donaldson came into the room that Armani shared with Ann at the duplex and woke him up to tell him a story. Armani testified that Ann would not lie about something serious.

Donaldson testified that Mother's one condition for allowing him to live with her was that he not get back together with his ex-wife. Donaldson then described the confrontation he had with Mother on June 28, 2015, when he moved out of her house because he was getting back together with his ex-wife. Donaldson testified that he was never alone with Ann during the weekend of Easter 2011 and that he had left the Saturday evening before Easter before it got dark and had spent all night with his friends at a strip club. Donaldson said that none of the things that Ann testified about ever took place.

After hearing the above evidence, the jury found Donaldson guilty of continuous sexual abuse of a child as charged in count 1 of the indictment and assessed his punishment at twenty-five years' confinement, and the trial court sentenced Donaldson accordingly. Donaldson perfected this appeal.

### III. SUFFICIENT EVIDENCE SUPPORTS CONVICTION

In his first issue, Donaldson argues that the evidence is insufficient to support his conviction for continuous sexual abuse of a young child. Donaldson

8

attacks Ann's chronology of the events, contends that Ann's account of the events are "patently inconsistent and wholly implausible," and argues that Ann's testimony required corroboration.

## A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder

9

resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

## B. Elements of the Offense

A person commits the offense of continuous sexual abuse of a young child if, during a period that is thirty days or more in duration, a person who is seventeen years of age or older commits two or more acts of sexual abuse against a child younger than fourteen years of age. Tex. Penal Code Ann. § 21.02(b). An "act of sexual abuse" includes indecency with a child, sexual assault, aggravated sexual assault, and sexual performance with a child. *Id.* § 21.02(c)(2)–(4), (6).

## C. Sufficient Evidence Exists on All Elements of the Offense

Here, the jury heard testimony that Donaldson, who was over the age of seventeen, committed two or more acts of sexual abuse against Ann when she was nine years old by putting his mouth on her sexual organ, touching his sexual organ to Ann's sexual organ, and putting his sexual organ in Ann's mouth when they lived at the duplex on Hulen Park Circle; by putting his mouth on Ann's sexual organ when they visited relatives in Wichita Falls; and by putting his mouth on Ann's sexual organ and touching his sexual organ to Ann's sexual organ when they lived at the house on Carolina Drive.

Donaldson challenges the sufficiency of the evidence to support the timing of the three events, arguing that the State did not present evidence showing that the events occurred over more than thirty days. During Ann's forensic interview,

10

recorded the day after she made her outcry, she described the events in a different order than she did at trial but said that the event in Wichita Falls occurred on Easter weekend when she was nine years old and in the fourth grade, which the trial court judicially noticed was on or about April 24, 2011; that the event at the duplex on Hulen Park Circle occurred in May before her sister's birthday on May 5, 2011; and that the event at the house on Carolina Drive occurred a couple of days before June 30, 2011. During the trial four years later, Ann testified that the event at the duplex occurred first—sometime after spring break but before summer break 2011, allowing the jury to infer it occurred sometime before Easter 2011; that the event in Wichita Falls occurred on Easter weekend (April 24, 2011); and that there was an event at the house on Carolina Drive. Donaldson testified that he moved out of the house on Carolina Drive on June 28, 2011. Viewing the evidence in the light most favorable to the verdict, a rational factfinder could have found beyond a reasonable doubt that Donaldson, during a period that was thirty days or more in duration (either from April 24, 2011 to shortly before June 30, 2011, or from sometime before April 24, 2011 to June 28, 2011), committed two or more acts of sexual abuse against Ann, a child younger than fourteen years of age. *See Smith v. State*, 397 S.W.3d 765, 769–70 (Tex. App.—San Antonio 2013, no pet.) (holding evidence sufficient to establish that two acts of sexual abuse of child were committed more than thirty days apart); *Michell v. State*, 381 S.W.3d 554, 564 (Tex. App.—Eastland 2012, no pet.) (holding evidence sufficient to establish that multiple acts of sexual

11

abuse of child were committed more than thirty days apart, even though child could not give specific dates, because child provided details of where acts took place); *Brown v. State*, 381 S.W.3d 565, 577 (Tex. App.—Eastland 2012, no pet.) (same).

Donaldson also argues that no physical evidence corroborated Ann's allegations of sexual abuse, but a complainant's testimony need not be corroborated by medical or physical evidence. *See Newby v. State*, 252 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) ("[Victim's] testimony, standing alone, is sufficient evidence of penetration."). Donaldson's remaining arguments—that Ann's bed was noisy and would have awakened Armani, that Armani testified that Donaldson had never awakened Ann and him in the middle of the night, that Ann's testimony at trial differed from some of the details she provided during her forensic interview, and that the timing of Ann's outcry after Donaldson broke up with Mother rendered Ann's allegations of sexual abuse "particularly suspicious"—challenge Ann's credibility. The jury, however, was the sole judge of the weight and credibility of the evidence, and we must presume that they resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Murray*, 457 S.W.3d at 448; *Dobbs*, 434 S.W.3d at 170.

Accordingly, we hold that the evidence presented at trial, which is detailed above, and the reasonable inferences to be drawn from the evidence—when

viewed in the light most favorable to the verdict—are sufficient to have enabled a rational factfinder to have found beyond a reasonable doubt all of the elements of the offense of continuous sexual abuse of a young child. *See* Tex. Penal Code Ann. § 21.02(b); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray*, 457 S.W.3d at 448; *Bautista v. State*, 474 S.W.3d 770, 775–76 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding evidence sufficient to support conviction for continuous sexual abuse of young child). We overrule Donaldson's first issue.

## IV. ADMISSION OF AUDREY'S TESTIMONY DID NOT AFFECT DONALDSON'S SUBSTANTIAL RIGHTS

In his second issue, Donaldson argues that the trial court reversibly erred by admitting hearsay statements made by Ann to Audrey because Audrey did not qualify as an outcry witness under article 38.072.[8] Donaldson contends that Ann's forensic interview—during which Ann affirmed to Paschall that she had told Mother "all the same stuff" that she had told Paschall—and the State's outcry notice[9] demonstrate that Mother was the proper outcry witness.

---

[8]*See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3) (West Supp. 2016) (permitting outcry statements by certain victims of child abuse to be admitted during trial despite the hearsay rule if the outcry witness was the first person, eighteen years of age or older, "to whom the child . . . made a statement about the offense").

[9]In its notice of intent to use Ann's outcry statement to Mother, the State set forth the following:

> [Mother], an individual over eighteen years of age, reported that [Ann], the victim, told her the following: "Ricky had touched her in areas where he wasn't supposed to and pointed to [her] private area. She said he touched her both on top and under clothes. [H]e

13

Assuming without deciding that the trial court erred by concluding that Audrey qualified as an outcry witness, we address whether such error is harmless.[10]  *See* Tex. R. App. P. 44.2(b); *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref'd) (stating that the improper admission of outcry testimony is nonconstitutional error), *cert. denied*, 544 U.S. 925 (2005).  Under rule 44.2(b), we review nonconstitutional error to determine whether the error affected the substantial rights of Donaldson.  *See* Tex. R. App. P. 44.2(b).  If it did not, we must disregard it.  *See id.*  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and

---

came into her room one time and laid on her bed.  He asked her if she would tell.  Then he started feeling on her and moved panties to [the] side and stuck his thing in her.  She told him it was hurting her and told him to stop.  When he was finished[,] he got up and got to the shower."

[10]An error analysis is not required when a harm analysis is dispositive. *See State v. Ambrose*, 487 S.W.3d 587, 590, 599 (Tex. Crim. App. 2016) (affirming court of appeals's decision that assumed without deciding that jury instructions were erroneous and that then performed harm analysis); *see also Wooten v. State*, 400 S.W.3d 601, 607 (Tex. Crim. App. 2013) ("Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction.").

how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove." *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).

Donaldson contends that he was harmed by Audrey's testimony because she was a more neutral witness than Mother, she bolstered Ann's credibility, and she made it appear less likely that Mother had coached Ann to make the allegations against him. Audrey's testimony, however, was not harmful because the same evidence was admitted without objection through the video of Ann's forensic interview with Paschall, in which she gave detailed descriptions of the sexual abuse that occurred at all three locations. Ann and Crawford also testified at trial without objection as to the details of the sexual abuse that occurred at all three locations.

We conclude that, in the context of the entire case against Donaldson, the trial court's error in admitting Audrey's testimony under article 38.072, if any, did not have a substantial or injurious effect on the jury's verdict and did not affect Donaldson's substantial rights. *See King*, 953 S.W.2d at 271; *Broderick v. State*, 35 S.W.3d 67, 75 (Tex. App.—Texarkana 2000, pet. ref'd) (holding trial court's error in admitting officer's testimony as outcry witness for touching incident was harmless because the same evidence was introduced through other testimony without objection). Thus, we disregard any error. *See* Tex. R. App. P. 44.2(b);

15

*Garcia v. State*, 228 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding appellant's argument of harm arising from allowing improper outcry witness to testify "fails because [improper outcry witness's] testimony did not present the jury with any new information"); *Elder*, 132 S.W.3d at 27 (disregarding trial court's error in admitting witness's testimony under outcry exception because evidence the same as or similar to virtually all of the witness's testimony was admitted through several other witnesses without objection). We overrule Donaldson's second issue.

## V. CONCLUSION

Having overruled Donaldson's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 29, 2016

16