

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00201-CR

JARID LAWSON                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F15-2015-158

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Jarid Lawson appeals his conviction for continuous sexual abuse of a young child for which he was sentenced to life imprisonment. *See* Tex. Penal Code Ann. § 21.02(b), (h) (West Supp. 2017). In a single issue, Lawson argues that the evidence is insufficient to prove beyond a reasonable doubt that

---

[1]*See* Tex. R. App. P. 47.4.

he committed two acts of sexual abuse against his daughter Amanda[2] at least thirty days apart. Because Amanda's testimony, as well as her counselor's testimony, provides sufficient evidence to support the timing element of the offense, we will affirm.

## II. FACTUAL BACKGROUND[3]

Amanda was born in September 2004. Shortly thereafter, Lawson and Amanda's mother separated and ultimately divorced, and Amanda lived with her mother. When Amanda was in second grade, she started going to Lawson's house on Thursday evenings and progressed to staying at Lawson's house on Thursday nights and every other weekend. Prior to the abuse, Lawson was Amanda's "favorite person" because she received a lot of attention from him, he was easy to talk to, and he was someone she trusted.

Amanda, who was twelve years old at the time of the trial, testified that her father started sexually abusing her when she was nine years old and continued sexually abusing her after she turned ten. The first act of sexual abuse occurred in the living room at Lawson's house in the fall before Amanda started fourth grade; Amanda explained that it was before her tenth birthday in September

---

[2]To protect the anonymity of the child victim, we use a pseudonym. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[3]Because the only element of his conviction that Lawson challenges on appeal is the timing of the sexual abuse—that two acts of sexual abuse were committed thirty days apart—we set forth only the facts necessary for disposition of his arguments related to the timing issue.

2014. Lawson told Amanda that he needed to teach her what sex was and told her to take off her clothes. After Amanda complied, Lawson used his hand to touch all over her body, including her breasts, her butt, and her vagina.[4] Amanda believed that Lawson only stopped touching her because her step-mom was due home soon. Lawson told Amanda not to tell anyone because she could get in trouble. Lawson explained that "some dads do this because . . . they want to do it, but he wanted to do it for education." Amanda then put her clothes back on.

When asked whether she remembered where Lawson touched her during other times, Amanda responded, "Yeah. There's a lot of times." Amanda described a time when she and Lawson were in his bedroom and she was laying on her back on the bed without any clothes on. Amanda said that Lawson also did not have on any clothes and was in between her legs touching the inside of her vagina with his hand. Amanda testified that during this encounter, Lawson was not doing anything to himself but that other times "he would touch his dick and then have an orgasm and sperm would come out." When asked whether there were other times when sperm came out, Amanda testified that it happened "every time after the second time" and that there was more than one time when he touched his dick while he was with Amanda. Lawson told Amanda not to tell anyone about this event.

---

[4]Amanda testified that Lawson taught her the names of the male and female body parts, including slang terms such as "dick," and explained what an orgasm is. In setting forth Amanda's testimony, we use the same terms that she used.

3

Amanda also testified regarding an incident that occurred while she was taking a shower. Amanda said that Lawson came in to the bathroom and watched her while she showered, which she thought "was creepy." Amanda told Lawson that one of her friends had said a bad word, and Amanda told Lawson the bad word. Lawson told Amanda that because she had cursed, she "had to have a punishment." Lawson usually punished Amanda by explaining why what she had done was wrong and then requiring her to write Bible verses or dictionary words. But this time, Lawson gave her the choice of "sucking his dick or touching it," and she chose the latter. Amanda testified that she touched Lawson's dick, that he had an orgasm, and that she removed her hand because she was "really grossed out." Lawson told her not to tell anyone.

Amanda believed that another touching occurred during the same episode as "the shower time." Amanda testified that when she got out of the shower, she ended up on top of Lawson without her clothes on and that he rubbed his dick on the inside of the lips of her vagina.

Another time, Amanda was laying on Lawson's bed without clothes on, and he retrieved a red cylindrical device from a drawer. Lawson told Amanda that the device was a vibrator and that it was used "for pleasure purposes." Amanda testified that Lawson put the vibrator on her vagina but not inside her. Amanda said Lawson stopped when she had an orgasm.

Amanda described another time when Lawson touched her. During that event, she was laying on the couch in the living room and Lawson was in

4

between her legs. Amanda was watching pornography on Lawson's phone, and he "stuck his finger inside of [her]." Amanda testified that "hurt a lot." Amanda further testified that there were other times she watched videos on Lawson's phone of people having sex.

Amanda testified that the last act of sexual abuse happened in her bedroom at Lawson's house two or three weeks before the STARR test, which was close to the end of her fourth-grade year. Lawson came in to Amanda's bedroom while she was laying on her back on the bed, climbed on top of her, and tried to kiss her; she told him no and pushed him off of her. Amanda testified that she had been wearing a nightgown when Lawson came in to her room but that either he took it off or she took it off. When Amanda told Lawson that she did not want him to kiss her, he told her that it was going to be the last time. Amanda testified that Lawson had told her that "10 other times before," so she knew it was not going to be the last time. Lawson also told her not to tell anyone about this and that "it was for educational purposes."

Amanda testified that she could not remember every single time that Lawson had touched her. When asked how often Lawson had touched her, Amanda responded that she was at his house every Thursday and every other weekend, that her step-mom was gone on Saturdays,[5] and that it happened "a lot." Amanda later testified that the sexual abuse happened "[a] lot more than

---

[5]Amanda testified that her step-mom was never at the house when the sexual abuse occurred.

five times. Like more than a hundred times." When asked if it just seemed like more than a hundred times, Amanda responded, "I was there all the time[,] and it was anytime really we were alone."

Amanda testified that she had been in counseling since she was approximately four years old due to being bullied at school and that one week during her appointment, her counselor gave her a form to complete that asked if anyone had ever touched her on her "swimsuit parts." Amanda did not understand that phraseology and asked her counselor what it meant. Amanda's counselor explained that "swimsuit parts" referred to the body parts covered by a swimsuit and included her breasts, butt, and vagina. Amanda testified that she was "kind of done with everything" and that she "didn't want to go through that anymore," so she answered that Lawson had touched her in the places covered by her swimsuit.

Amanda explained that she did not bring up the sexual abuse earlier because "I was scared. I -- I didn't want him to get in trouble. He was my favorite person. And I didn't want this to be happening. I wanted it to be a bad dream[,] and I wanted it to stop. But I didn't know how to tell anyone."

Amanda recalled that she had talked to representatives from Child Protective Services a few times,[6] but she testified that she had talked to them

---

[6]CPS received several referrals regarding neglectful supervision or abusive conduct by Amanda's mother, but those allegations—some of which were initiated by Lawson—were ruled out.

"before all this started."  Amanda reiterated several times that she had spoken to CPS while she was in the third grade, which "was before everything started."

Jennifer Stripling, Amanda's counselor, testified that during Amanda's counseling session on March 30, 2015, she gave Amanda a survey that asked her to put a dot next to any statement that she was worried about, to put two dots next to any statement that was a big worry, and to put three dots next to any statement that was a giant worry.  Amanda put three dots next to the statement: "I have an awful secret I'm nervous to share."  When Amanda came to the next statement—"[S]omeone is touching me in a way that I don't like"—she stopped filling out the survey and asked Stripling what that statement meant.  Stripling explained the statement, and Amanda said that her dad had been touching her in the area that is usually covered by a bathing suit.  Amanda told Stripling that the touching had started in "late fall the previous year[] [a]round Thanksgiving time . . . 2014" and that it occurred when she visited her dad and her step-mom was at work.  Stripling's understanding was that the abuse ended at the time of the outcry—March 30, 2015.  Stripling brought in Amanda's mother, and then Stripling reported Amanda's outcry to CPS.

Amanda's mother testified that in June or July 2014—just before Amanda turned ten years old in September 2014—she noticed that Amanda had started sleeping with her light on and that she had started piling all her stuffed animals on top of her body when she was in bed.  Later in the year, Amanda started having panic attacks when she knew she would have to go visit Lawson.

7

Katelyn Kaske, an investigator with CPS, testified that she first interviewed Amanda on October 20, 2014, after CPS received a referral that Amanda's mother had been leaving Amanda and her half-sisters unsupervised. Kaske testified that during the interview, she asked Amanda whether she had been sexually abused, and Amanda said no. Kaske observed Amanda's forensic interview the following week on October 30, 2014, when Amanda was again asked whether she had been sexually abused, and she again answered no.

After CPS was informed of Amanda's March 30, 2015 outcry, Kaske observed Amanda's forensic interview on April 2, 2015. Kaske testified that she did not have concerns that Amanda had been coached prior to the interview because Amanda was very detailed in her outcry; conversely, Kaske said that "[m]ost kids that are coached aren't very detailed in their outcry or don't know specific instances."

### III. SUFFICIENT EVIDENCE SUPPORTS TIMING OF ASSAULTS

In his sole issue, Lawson argues that the evidence is insufficient to prove beyond a reasonable doubt that he committed two acts of sexual abuse against Amanda at least thirty days apart. Lawson attacks Amanda's testimony, arguing that she "did not testify with any appreciable degree of specificity, so as to permit some timeline to be established between the incidents of sexual abuse."

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to

8

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

**B. Elements of the Offense**

A person commits the offense of continuous sexual abuse of a young child if, during a period that is thirty days or more in duration, a person who is

9

seventeen years of age or older commits two or more acts of sexual abuse against a child younger than fourteen years of age. Tex. Penal Code Ann. § 21.02(b). An "act of sexual abuse" includes, among other types, indecency with a child, sexual assault, aggravated sexual assault, and sexual performance with a child.[7] *Id.* § 21.02(c)(2)–(4), (6). Although the exact dates of the acts of sexual abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that one act of sexual abuse occurred on at least the 29th day after the day of another act of sexual abuse. *See id.* § 21.02(d) ("The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."). However, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. *Id.*

---

[7]The indictment alleged that the acts of sexual abuse that Lawson committed constituted indecency with a child:

> JARID LAWSON, who is hereinafter styled defendant, during a period that was 30 days or more in duration, to-wit: from on or about the 1st day of September, 2014, through on or about the 15th day of March, 2015, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there commit two or more acts of sexual abuse, namely, Indecency with a Child against [Amanda], to-wit: with the intent to arouse or gratify the sexual desire of the said defendant, engage in sexual contact with [Amanda] by touching the genitals of [Amanda], and at the time of the commission of each of those acts, the defendant was at least 17 years of age and [Amanda] was a child younger than 14 years of age, and not the spouse of the defendant[.]

10

## C. Sufficient Evidence Exists on Timing of Sexual Abuse

Here, the jury heard testimony from Amanda that Lawson had committed two or more acts of sexual abuse against her beginning before she entered fourth grade and continuing up until the spring when she was in fourth grade. Lawson challenges the timing of the first act of sexual abuse, arguing that because Amanda denied being sexually abused when she was interviewed by CPS in October 2014, "it is reasonable to conclude that [the] abuse, if any, had not started prior to [her] denials of abuse on October 30, 2014" and that "the jury was left only to speculate as to whether any sexual abuse began more than 30 days before the last instance of sexual abuse in March 2015"[8] because Amanda "provided no additional time line or point of reference for any abuse." Even assuming that Amanda's testimony about the timing of the first act of sexual abuse is incorrect, the jury had before it Stripling's testimony that Amanda disclosed to her that the touching started in late fall around Thanksgiving 2014, as well as other testimony from Amanda that the sexual abuse occurred any time that she was alone with Lawson, that her step-mom worked every Saturday, that she was at his house every other weekend, and that the sexual abuse occurred "more than a hundred times." Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Lawson, during a period that was thirty days or more in duration (from

_____

[8]Lawson does not challenge Amanda's testimony regarding the timing of the last act of sexual abuse.

11

approximately late Thanksgiving 2014 to March 2015), committed two or more acts of sexual abuse against Amanda, a child younger than fourteen years of age. *See Smith v. State*, 397 S.W.3d 765, 769–70 (Tex. App.—San Antonio 2013, no pet.) (holding evidence sufficient to establish that two acts of sexual abuse of child were committed more than thirty days apart even though complainant's testimony suggested two different time periods for the second incident); *Williams v. State*, 305 S.W.3d 886, 890 (Tex. App.—Texarkana 2010, no pet.) (holding evidence sufficient to establish that two acts of sexual abuse of child were committed more than thirty days apart based on victim's testimony that abuse occurred "[j]ust about every time that I went out there to stay with grandmother" and record reflected that victim went to grandmother's every day during the work week for a five-month period).

Lawson further attacks Amanda's credibility, arguing that she had denied being sexually abused when asked about it during two CPS interviews after the abused had allegedly already begun. The jury, however, was the sole judge of the weight and credibility of the evidence, and we must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea*, 483 S.W.3d at 33. Lawson also argues that the evidence is insufficient because he never made any admissions or inculpatory statements about sexually abusing Amanda, there were no witnesses, and there was no confirmatory scientific evidence of sexual abuse. Lawson's arguments indicate that Amanda's allegations of sexual abuse

12

must be corroborated, but a complainant's testimony, standing alone, is sufficient. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) ("[Victim's] testimony, standing alone, is sufficient evidence of penetration.").

Accordingly, we hold that the evidence presented at trial and the reasonable inferences to be drawn from the evidence—when viewed in the light most favorable to the verdict—are sufficient to have enabled a rational factfinder to have found beyond a reasonable doubt that Lawson committed two or more acts of sexual abuse against Amanda during a period that was thirty days or more in duration. *See* Tex. Penal Code Ann. § 21.02(b); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Smith*, 397 S.W.3d at 769–70; *Williams*, 305 S.W.3d at 890. We overrule Lawson's sole issue.

## IV. CONCLUSION

Having overruled Lawson's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, J.; SUDDERTH, C.J.; and BIRDWELL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 8, 2018

13