Opinion filed July 30, 2021



In The

# Eleventh Court of Appeals

—————

## No. 11-19-00214-CR

—————

**JORGE ALVARADO SOTO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51505**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jorge Alvarado Soto of continuous sexual abuse of a young child or children and assessed his punishment at confinement for a term of twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings six issues on appeal challenging his conviction. We affirm.

*Background Facts*

The indictment alleged that, "on or about and between the 30th day of May, 2008 and the 31st day of December, 2011," Appellant intentionally and knowingly committed two or more acts of sexual abuse against DB1 and DB2 "to-wit: Indecency with a Child by Contact and Aggravated Sexual Assault of a Child." DB1 and DB2 are twin sisters. They were fifteen years old at the time of trial. Appellant is their uncle.

DB1 and DB2 testified about a conversation that occurred in their family's truck in October 2017. During the conversation, their mother made reference to a person being the victim of sexual assault. DB1 testified that, after her brother made a comment that some victims of sexual assault might like it, DB2 told him "[t]hat's not funny" and started to cry. Their mother asked DB2 what was wrong, at which point DB1 told DB2 to tell their mother "what happened." DB2 told her family that she "had gotten raped" by Appellant. DB1 then told her family that the same thing had happened to her.

DB1 testified that the incident that she remembered the most occurred when she was at Appellant's home in Midland for a sleepover. She testified that this event happened when she was six or seven. DB1 testified that she rode with Appellant and Appellant's stepson in Appellant's welding truck to drop off the stepson at a friend's house. She testified that, on the way back to Appellant's house, Appellant asked if she wanted to drive. Appellant then pulled into a parking lot, and they both got out of the truck. DB1 testified that Appellant pulled down her pants and underwear and then pulled down his pants and underwear. DB1 testified that Appellant then "put his penis in my butt."

The next incident that DB1 testified about occurred at her house in Odessa. Appellant and his family were at DB1's home for a family cookout. DB1 testified

that she was in her bedroom wearing her underwear while she waited for her shorts to dry. She testified that Appellant entered her room, pulled her underwear down, and began touching the outside of her vagina. DB1 estimated her age to be seven or eight at the time.

The next incident that DB1 described occurred at Appellant's home in Midland. DB1 testified that Appellant entered the bathroom as she was using it. She testified that Appellant told her to keep using the bathroom and to "just ignore him." DB1 stated that she just left the bathroom.

DB2 testified that she and DB1 had spent a lot of time with Appellant when they were younger. She recalled "about five" incidents that occurred with Appellant. DB2 testified that it started when she was five and her younger cousin, J.S., "was months old." DB2 was sitting on the couch holding J.S. while Appellant's wife was washing dishes. DB2 testified that Appellant asked her to go to his bedroom because he was going to give her candy. DB2 stated that Appellant took J.S. from her arms and laid him on the bed. Appellant then placed DB2 on the bed and began moving back and forth and side to side on top of her while both were clothed. DB2 testified that Appellant's "penis part" was touching her genital area and that he was breathing heavily and loudly.

The next incident described by DB2 occurred when Appellant asked her to feed J.S. in a highchair in the kitchen of Appellant's home. DB2 did not recall how old she was but she estimated J.S's age to be over six months. DB2 testified that Appellant put his hand down the back of her pants, under her underwear. She testified that Appellant moved his hand up and down and rubbed her on her "butt."

The third incident that DB2 described occurred in the bathroom. Appellant unlocked the door and entered the bathroom as DB2 was picking up her pants and underwear after using the bathroom. DB2 testified that Appellant put his fingers between the outer lips of her vagina, closer to the front than the back. DB2 could

3

not remember her age at the time of this incident, but she recalled that it happened after the first two incidents.

The fourth incident involved Appellant unbuckling DB2's pants and belt. However, Appellant stopped when DB2 asked "[w]hat are you doing?"

The fifth incident that DB2 detailed occurred when she was in a car with Appellant and Appellant's stepson. DB2 testified that, while driving, Appellant reached over into the passenger seat and touched her over her underwear in her genital area. She estimated that she was seven or eight when this incident happened.

The final incident that DB2 described was similar to the first incident. DB2 testified that Appellant offered her some candy if she went to his bedroom. She testified that Appellant placed her on the bed and then removed his shirt and his shorts. He then climbed on top of her wearing only his underwear and started moving up and down and side to side. DB2 testified that Appellant's penis was touching her genital area over her clothing and that it was hard. She also stated that he was breathing heavily and loudly.

The State also called Kelli Crouse of the Children's Advocacy Center in Midland as an outcry witness. Crouse interviewed both DB1 and DB2 in October 2017. Appellant objected to Crouse's outcry testimony on the basis that Crouse was not the proper outcry witness. At a bench conference, Appellant's trial counsel asserted that the twins' mother was the proper outcry witness. After hearing the arguments of counsel, the trial court overruled Appellant's objection.

Crouse first testified about the matters that DB2 told her about the incidents involving Appellant. DB2 told Crouse about four incidents. The first incident concerned DB2's assertion that Appellant stuck his hands inside of her pants as she was feeding J.S. The second incident concerned when Appellant took DB2 to his bedroom for the purported reason of giving her candy. The third incident that DB2 described to Crouse involved the second time that Appellant took DB2 to his

4

bedroom. The fourth incident occurred in Appellant's house when he entered the bathroom as DB2 was using it. Unlike DB2's trial testimony about the incident, Crouse testified that DB2 told her that Appellant put his hand in her pants and that it went "in her front." Crouse testified that DB1 could recall the details of the two incidents that DB1 testified about at trial.

Appellant testified on his own behalf during the guilt/innocence phase. He denied the allegations made by DB1 and DB2. He also called several family members as defense witnesses. They testified that they observed Appellant with DB1 and DB2, as well as with other children, and that they did not have any concerns about Appellant being around children. Appellant's wife testified that he never took DB1 or DB2 alone with him in a vehicle and that her son never spent the night at a friend's house.

*Analysis*

*Sufficiency of the Evidence*

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction for continuous sexual abuse of a child. Specifically, Appellant contends that the evidence was legally insufficient to show that multiple acts of sexual abuse occurred over a period of thirty or more days. Appellant asserts that "[a]ll of the testimony regarding the dates or ages were based on pure speculation or guesswork and even then, the testimony was still insufficient to provide any relevant timeframe."

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 289 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a

5

reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of continuous sexual abuse of a child if (1) during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense. TEX. PENAL CODE ANN. § 21.02(b) (West 2019). "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), including aggravated sexual assault and indecency with a child by contact. *Id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021. As noted previously, the indictment alleged that Appellant committed two or more acts of sexual abuse against DB1 and DB2, to-wit: indecency with a child by contact and aggravated sexual assault of a child, during a period of thirty or more days in duration.

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2020); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see also Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish element of penetration beyond a reasonable doubt). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Thus, the testimony of DB1 and DB2 alone can be sufficient to support a conviction for continuous sexual abuse of a child. *See Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

"[A]lthough the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[T]he offense of continuous sexual abuse of a child does require proof that the last act of sexual abuse occur on at least the 29th day after the day of the first act."). Appellant asserts that a jury is prohibited from drawing conclusions based on speculation. *See Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 15). Appellant contends that the evidence was such that the jury could have only speculated that Appellant committed multiple acts of sexual abuse against DB1 or DB2 over the course of thirty or more days. We disagree.

"Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Id*. (quoting *Hooper*, 214 S.W.3d at 16). Conversely, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. "Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial[.]" *Id*. (citing *Hooper*, 214 S.W.3d at 15).

DB1 testified about two incidents. According to DB1, the first incident (anal penetration occurring in a parking lot after riding in Appellant's welding truck) occurred when she was six or seven. As to the second incident (vaginal contact occurring in Ector County[1]), DB1 first testified that it occurred when she was eight or nine, but then later testified that she was "probably like seven or eight."

DB2 testified about several incidents. From a chronological perspective, DB2 testified that the first incident (sexual contact in Appellant's bedroom) occurred when she was five years old and her cousin, J.S., "was months old." Appellant's wife testified that J.S. was ten years old at the time of trial. DB1 and DB2 were fifteen at the time of trial, meaning that they were approximately five years old when J.S. was born. With respect to the incident that occurred when DB2 was feeding J.S., DB2 testified that J.S. was over six months old. DB2 testified that the incident in Appellant's car occurred when she was seven or eight.

Appellant focuses on the fact that DB1 and DB2 testified that they could not remember the exact dates when the incidents occurred. As we noted in *Michell*, "[t]he legislature created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing

---

[1]The location where the sexual abuse occurred is not an element of the offense, and the legislature did not require that all elements of the offense be committed in one county. *Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.—San Antonio 2013, pet. ref'd); *see* PENAL § 21.02.

acts of sexual abuse." 381 S.W.3d at 561; *see Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts.")). The Texas Court of Criminal Appeals noted in *Villalon* that:

> [There is an] important public policy that we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults. To expect such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the victims of crimes such as the instant offense in order to evade successful prosecution.

791 S.W.2d at 134.

The testimony of DB1 and DB2 established that the acts of sexual abuse committed against each of them spanned more than thirty days. The first incident involving either girl occurred when they were five years old, and the last act occurred when they were seven, eight, or nine, a period in excess of thirty days. Accordingly, there was evidence from the testimony of DB1 and DB2 that the acts of sexual abuse spanned thirty or more days. Crouse's outcry testimony also supports that the acts of sexual abuse spanned thirty or more days. To the extent that there were any discrepancies in the evidence about the dates of when the acts of sexual abuse occurred or that DB1 and DB2 could not remember the exact dates, it was the jury's duty to resolve those discrepancies and we presume that it resolved them in favor of the verdict. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Furthermore, we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Moreover, the evidence shows at least six acts of sexual abuse occurring with multiple victims that did not reside with Appellant. The sheer number of acts, coupled with the testimony of DB1 and DB2 about their ages when the acts occurred, permitted the jury to reasonably infer that the acts of sexual abuse spanned a period of time of thirty days or more. Viewed in the light most favorable to the verdict, we find that there is sufficient evidence from which a rational trier or fact could have concluded that Appellant committed continuous sexual abuse of a child or children. We overrule Appellant's first issue.

*Outcry Witness*

In his second issue, Appellant contends that the trial court erred by failing to hold a hearing required by Article 38.072 of the Texas Code of Criminal Procedure with respect to Crouse's outcry testimony. *See* CRIM. PROC. art. 38.072, § 2(b)(2) (West Supp. 2020). Article 38.072 allows the admission of a hearsay statement describing sexual abuse made by a child victim to an outcry witness. Article 38.072, section 2(b) sets out the requirements for the admission of an outcry witness's testimony over a hearsay objection. Section 2(b)(2) requires "that the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *Id.*; *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011).

When the prosecutor asked Crouse what DB2 told her, Appellant's trial counsel lodged a hearsay objection.[2] The prosecutor responded that Crouse was the designated outcry witness. After the trial court initially overruled Appellant's objection, Appellant's trial counsel asked to approach the bench. Trial counsel then informed the trial court that Appellant objected to Crouse as being the proper outcry

---

[2]As we previously noted, Crouse first testified about the matters that DB2 told her about the incidents involving Appellant. Appellant's hearsay objection addressed the outcry statements made by both girls to Crouse.

witness because DB1 and DB2 had told their mother the details of the incidents. The trial court then received arguments from the attorneys concerning whether Crouse was the proper outcry witness. At the conclusion of the bench conference, the trial court overruled Appellant's objection.

On appeal, Appellant asserts that the trial court should have conducted a hearing outside of the presence of the jury under article 38.072, section (2)(b)(2) after Appellant made a hearsay objection to Crouse's testimony. Appellant essentially contends that the trial court erred by permitting Crouse to testify in the absence of the required hearing and that Appellant was harmed because Crouse offered evidence that was harmful to him. We disagree with Appellant's analysis.

A hearing under article 38.072, section (2)(b)(2) is for the limited purpose of determining if the child victim's statement to the outcry witness "is reliable based on the time, content, and circumstances of the statement." CRIM. PROC. art. 38.072, § 2(b)(2); *see Sanchez*, 354 S.W.3d at 487–88. Appellant was not seeking to challenge the reliability of the statements made by DB1 and DB2 to Crouse. Instead, Appellant asserted that Crouse was not the first adult to whom DB1 and DB2 made an outcry. We addressed a similar complaint in *Smith v. State*, 131 S.W.3d 928, 930–32 (Tex. App.—Eastland 2004, pet. ref'd). We concluded in *Smith* that a complaint that the outcry witness was not the first person to whom the outcry statement is made is beyond the scope of the reliability hearing required by article 38.072, section (2)(b)(2). *Id*. at 932.

For an outcry statement to be admissible, the witness must be the first person over the age of eighteen to whom the child made a statement about the offense. CRIM. PROC. art. 38.072, § 2(a)(3); *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013). The statement must describe the alleged offense "in some discernible manner" and must be more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 90–91 (Tex. Crim. App.

11

1990). In general, the proper outcry witness is the first adult to whom the child victim describes "how, when, and where" the abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd). If the child makes only a general allusion to the first adult and gives a more detailed account to a second adult, the second adult may be the proper outcry witness. *See Garcia*, 792 S.W.2d at 91.

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). We review a trial court's designation of an outcry witness under an abuse of discretion standard. *Garcia*, 792 S.W.2d at 92. A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We will not disturb a trial court's designation of an outcry witness if it is supported by the evidence. *Garcia*, 792 S.W.2d at 92.

Appellant does not assert that the trial court abused its discretion by determining that Crouse was the proper outcry witness. Instead, he contends that the trial court erred by not conducting the required hearing. But as we have noted, his complaint about Crouse's testimony exceeded the scope of the required hearing. *See Smith*, 131 S.W.3d at 932. Accordingly, we disagree with his contention that he was harmed by the trial court's action. We conclude that the trial court's determination that Crouse was the proper outcry witness was not an abuse of discretion because the evidence at trial supports the trial court's implicit determination that DB1 and DB2 only gave a general allusion to Appellant's conduct to their mother. *See Garcia*, 792 S.W.2d at 91; *Michell*, 381 S.W.3d at 558. We overrule Appellant's second issue.

12

*Sufficiency of the Indictment*

In his third issue, Appellant contends that the trial court erred by overruling his motion to quash the indictment. He asserts that the indictment provided him with insufficient notice to prepare for trial. As noted previously, the indictment charged that Appellant intentionally and knowingly committed two or more acts of sexual abuse against DB1 and DB2 "to-wit: Indecency with a Child by Contact and Aggravated Sexual Assault of a Child." Appellant contends that the indictment was insufficient because it failed to allege the manner and means by which he committed indecency with a child by contact and aggravated sexual assault of a child.

"The sufficiency of an indictment is a question of law." *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019) (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004)). When reviewing the denial of a motion to quash that turns solely upon the issue of the sufficiency of the indictment, we review the trial court's decision de novo. *Id*.

Both the United States and the Texas constitution provide that a criminal defendant has the right to notice of the charges brought against him. *Moff*, 154 S.W.3d at 601; *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation. . . ."); TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused . . . shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof."). Thus, the charging instrument—in this case, the indictment—must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *Moff*, 154 S.W.3d at 601; *see State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008).

The First Court of Appeals addressed a similar contention in *Buxton v. State*, 526 S.W.3d 666, 679–82 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The defendant in *Buxton* asserted that the indictment for continuous sexual abuse of a

13

child was fatally defective because it failed to allege precisely how he committed the two acts of aggravated sexual assault of a child that were alleged as predicate offenses. *Id*. at 679–80. He asserted that the indictment should have alleged the manner and means by which he committed the two predicate offenses. *Id*. at 680. The court conducted a thorough analysis of other offenses that are defined by reference to an underlying predicate offense. *Id*. at 680–82 (discussing capital murder, engaging in organized criminal activity, sexual assault in cases involving bigamy, and continuing family violence). Relying upon the holdings in cases involving the other offenses, the court concluded that "in charging an offense for continuous sexual abuse, the State need not allege the specific manner and means by which the defendant allegedly committed the predicate offenses to provide constitutionally sufficient notice of the crime with which he is charged." *Id*. at 682.

We agree with the reasoning of the court in *Buxton*. Generally, an indictment that tracks the language of the applicable statute will satisfy constitutional and statutory requirements. *Hughitt*, 583 S.W.3d at 626 (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)). In enacting the continuous sexual abuse of a child statute, the legislature sought to penalize "the common factual scenario of an ongoing crime involving an abusive sexual relationship of a child." *Price v. State*, 434 S.W.3d 601, 607 (Tex. Crim. App. 2014) (quoting *Dixon*, 201 S.W.3d at 737); *see Buxton*, 526 S.W.3d at 681. The prohibited act under the statute is a "repetitive course of conduct over an extended period of time." *Price*, 434 S.W.3d at 608; *see Buxton*, 526 S.W.3d at 681.

To commit the offense of continuous sexual abuse, the defendant must commit two or more "acts of sexual abuse," which is statutorily defined by reference to eight different offenses under the Penal Code. PENAL § 21.02(c). The indictment in this case tracked the language of the statute because it alleged the violation of two predicate offenses enumerated in Section 21.02(c). *See Hughitt*, 583 S.W.3d at 626.

14

However, the indictment was not required to allege the manner and means by which Appellant committed the predicate acts. *See Buxton*, 526 S.W.3d at 682.

Moreover, as noted by the court in *Buxton*, even if the indictment, standing alone, was not sufficient to provide notice to satisfy due process concerns, courts may look at other sources to determine if the defendant had notice of the charges against him. 526 S.W.3d at 682–83 (citing *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009); *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003)). "Instead, the defendant does not suffer harm unless he did not receive notice of the State's theory against which he would have to defend." *Id*. at 683. Here, the State filed an "outcry" notice under Article 38.072 wherein the State stated the matters that DB1 and DB2 told to Crouse during their outcry statements. This notice set out the details that Appellant sought to be included in the indictment. Additionally, the underlying trial was the second trial of Appellant for continuous sexual abuse. The first trial ended in a mistrial. Appellant had notice of the State's allegations by virtue of the evidence presented in the first trial. Accordingly, Appellant was not harmed by the trial court's denial of his motion to quash the indictment. *See id*. We overrule Appellant's third issue.

*Lack of Unanimity Instruction in Jury Charge*

In his fourth and fifth issues, Appellant contends that the trial court erred by submitting a jury charge that did not contain the requisite unanimity instructions. He asserts (1) in his fourth issue that the application paragraph did not contain a unanimity instruction and (2) in his fifth issue that the unanimity instruction in the abstract portion of the jury charge was insufficient. That instruction provided: "After argument of counsel, you will retire and select one of your members as your presiding juror. It is the duty of the presiding juror to preside at your deliberations and to vote with you in arriving at a unanimous verdict in each count."

15

Appellant contends that these alleged errors caused him egregious harm. A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." CRIM. PROC. art. 36.14 (West 2007). The continuous sexual abuse statute has a specific provision addressing unanimity:

> If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

PENAL § 21.02(d). Appellant cites *Smith v. State*, 397 S.W.3d 765, 770 (Tex. App.—San Antonio 2013, no pet.), for the proposition that the absence of this unanimity instruction from the jury charge was error. The San Antonio Court of Appeals relied upon article 36.14 to conclude that the distinct unanimity provision of section 21.02(d) was required to be included in the jury charge. *Smith*, 397 S.W.3d 770. We agree.

Appellant did not object to the jury charge. Accordingly, reversal is required only if the error results in egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433

16

(Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*. "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id*. (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171. In *Almanza*, the Texas Court of Criminal Appeals outlined four factors that a reviewing court should consider when determining whether a jury-charge error resulted in egregious harm: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Villarreal*, 453 S.W.3d at 433.

As noted previously, the charge did not include the unanimity provision set out in the statute. However, the statutory unanimity provision is unique because it does not require the jury to agree on the same acts in order to convict Appellant of continuous sexual abuse. By contrast, most criminal offenses require the jury to agree upon "a single and discreet incident." *Cosio*, 353 S.W.3d at 771 (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). Furthermore, when the jury returned its verdict, the trial court questioned the foreperson to confirm that the jury's verdict was unanimous, and the trial court polled each of the jurors individually to determine that the verdict was unanimous. Accordingly, the omission of the statutory unanimity instruction and the deficiency, if any, of the

17

general unanimity instruction did not produce actual harm to Appellant in the form of a nonunanimous verdict.

We have detailed the evidence offered at trial. The evidence detailed multiple instances of sexual abuse occurring over a period of more than thirty days that the jurors could have used to find Appellant guilty of continuous sexual abuse. The jurors were not required to agree on two specific acts of sexual abuse to convict Appellant.

The closing arguments of counsel weigh against a finding of harm. The prosecutor argued that:

> We have two children here; two children, we have six incidences of sexual misconduct. For the offense, you have to believe two happened, two incidences of sexual conduct happened in a period of 30 days or greater. It doesn't have to be one girl two times, it can be either girl, just two times in a period greater than 30 days. Y'all don't have to agree on which two. Some of you can believe two happened, some of you can believe a separate two happened, as long as all 12 of you agree unanimously that beyond a reasonable doubt two incidences happened in a period greater than 30 days.

Appellant contends that the prosecutor's initial argument was a "subtle" misstatement of the law because it suggested that the jury could convict Appellant for two acts occurring within thirty days. However, any misstatement was corrected by the prosecutor's follow-up statement set out in the last sentence quoted above. Furthermore, Appellant's trial counsel also argued that "you have to have a gap of 30 days" between acts. Accordingly, the record does not reflect that Appellant suffered egregious harm from any deficiencies in the jury charge. We overrule Appellant's fourth and fifth issues.

*Jury Argument*

In his sixth issue, Appellant asserts that the prosecutors made closing arguments that "amounted to prosecutorial misconduct." Specifically, Appellant contends that the prosecutors vouched for witnesses' credibility, attacked Appellant's character, and raised non-record evidence.[3] However, Appellant did not object to any arguments made by the prosecutors during closing arguments. "The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). "Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." *Id*. Rules for error preservation in the context of jury argument apply even when a defendant asserts that the prosecutors' arguments constituted prosecutorial misconduct. *Id*. Accordingly, we overrule Appellant's sixth issue because he did not preserve it for appellate review.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


July 30, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[3]In light of our disposition of Appellant's sixth issue, we express no opinion on whether the prosecutors made improper closing arguments or engaged in prosecutorial misconduct.